## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | **No.: 1:07-cv-01280 (JDB)** |
| **OXYGEN MEDIA, INC.** | ) ) | **ORAL HEARING REQUESTED** |
| Defendant. | ) ) ) | |

### MOTION TO DISMISS

Defendant Oxygen Media, LLC ("Oxygen") by undersigned counsel, and pursuant to

Rule 12(b)(2) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss

Plaintiff American Youth Symphony's ("AYS") Complaint, on the grounds of lack of personal

jurisdiction. This motion is based on the attached Memorandum of Points and Authorities, the

Declaration of Fabian Milburn, the Affidavit of Erica Diaz, all papers on file in this action, all

matters subject to judicial notice, and such other and further matters as may be presented to the

Court prior to the determination of the motion.

Dated this 3rd day of August, 2007.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

<u>    Constance M. Pendleton /s/    </u>
Constance M. Pendleton (DC Bar No. 456919)
conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006-3402
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
conniependleton@dwt.com
lisazycherman@dwt.com

*Attorneys for Defendant Oxygen Media, LLC.*

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN YOUTH SYMPHONY )
)
Plaintiff, )
)
v. )    No. 1:078-cv-01280 (JDB)
)
OXYGEN MEDIA, INC. )    ORAL HEARING REQUESTED
)
Defendant. )
)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton (DC Bar No. 456919)
conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-3402
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499

*Attorneys for Defendant Oxygen Media, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT...............................................................................................................6

I.    PERSONAL JURISDICTION STANDARD .................................................6

II.   THERE IS NEITHER SPECIFIC NOR GENERAL JURISDICTION
      OVER OXYGEN.........................................................................................7

III.  THE "TRANSACTING BUSINESS" PRONG OF THE DISTRICT OF
      COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR
      SPECIFIC JURISDICTION OVER OXYGEN..................................................9

      A.    Plaintiff's Claim Does Not Arise From Business Transacted by
            Oxygen in the District of Columbia Sufficient to Satisfy the
            Requirements of § 13-423(a)(1) for Specific Jurisdiction ....................9

      B.    Oxygen's Cease and Desist Letter to Defendant Does Not
            Constitute Purposeful Transacted Business Within the
            District of Columbia ....................................................................14

IV.   THE "TORTIOUS INJURY" PRONG OF THE DISTRICT OF
      COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS
      FOR SPECIFIC JURISDICTION OVER OXYGEN..........................................15

V.    THERE IS NO BASIS FOR THIS COURT TO EXERCISE
      GENERAL JURISDICTION OVER OXYGEN ................................................16

      A.    Oxygen is Not Subject to this Court's General Jurisdiction under
            § 13-334(a) of D.C. Long Arm Statute Because Oxygen Does Not
            Have "Systematic and Continuous" Business Contacts in this
            Forum........................................................................................16

      B.    Defendant's Broadcast of its Cable Network into the District of
            Columbia Does Not Create General Jurisdiction.................................19

      C.    The Presence of Oxygen's Website Does Not Constitute "Substantial
            Business" Within the District of Columbia ........................................21

VI.   THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD
      VIOLATE DUE PROCESS.........................................................................23

      A.    Oxygen Did Not Purposefully Avail Itself of the District of Columbia ....24

      B.    Fair Play and Substantial Justice.....................................................25

CONCLUSION.........................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Acker v. Royal Merchant Bank & Finance Co.,* No. 98-00392, 1999 WL 1273476
(D.D.C. Feb. 10, 1999), *aff'd,* 203 F.3d 51 (D.C. Cir. 1999) .......................................... 9-10

*AMAF International Corp. v. Ralston Purina Co.,* 428 A.2d 849 (D.C. 1981).............................17

*Asahi Metal Industry Co. v. Superior Court of California, Solano County,*
480 U.S. 102 (1987 ........................................................................................................23

*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003),
*appeal dismissed,* No. 03-7166, 2003 WL 22971974,
(D.C. Cir. Dec. 11, 2003)...........................................................................................16, 17

*Blake Construction Co. v. C. J. Coakley Co.,* 431 A.2d 569 (D.C. 1981)....................................16

*Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D.D.C. 2005)............................................7, 9, 12, 13

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).....................................................10, 11, 14

*City of Moundridge v. Exxon Mobil Corp.,* 471 F. Supp. 2d 20 (D.D.C. 2007)..............................6

*COMSAT Corp. v. Finshipyards S.A.M.,* 900 F. Supp. 515 (D.D.C. 1995) ..................................9

*Crane v. New York Zoological Society,* 894 F.2d 454 (D.C. Cir. 1990) ........................................6

*Doe I v. Israel,* 400 F. Supp. 2d 86 (D.D.C. 2005)..................................................................24

*Dooley v. United Technologies Corp.,* 786 F. Supp. 65 (D.D.C. 1992) ....................................9, 12

*Edmond v. United States Postal Service General Counsel,* 949 F.2d 415
(D.C. Cir. 1991) ................................................................................................................7

*El-Fadl v. Central Bank of Jordan,* 75 F.3d 669 (D.C. Cir. 1996)...............................................17

*Environmental Research International, Inc. v. Lockwood Greene*
*Engineers, Inc.,* 355 A.2d 808 (D.C. 1976) ........................................................................24

*Estate of Klieman v. Palestinian Authority,* 467 F. Supp. 2d 107 (D.D.C. 2006) .........................23

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071 (10th Cir. 1995)..................................................13

*FC Investment Group LCN v. IFX Markets, Ltd.,* 479 F. Supp. 2d 30 (D.D.C. 2007) .................13

*First Chicago International v. United Exchange Co.,* 836 F.2d 1375 (D.C. Cir. 1988) ................7

*Gibbons & Co. v. Roskamp Institute,* No. 06-720, 2006 U.S. Dist. LEXIS 60762
(D.D.C. Aug. 28, 2006).................................................................................................10, 12, 13

*Gonzalez v. Internacional de Elevadores, S.A.,* 891 A.2d 227 (D.C. 2006).........................8, 16, 17

*Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002) ...................................22, 23

GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2001) .................21

Guevara v. Reed, 598 A.2d 1157 (D.C. 1991)...................................................................................16

Hanson v. Denckla, 357 U.S. 235 (1958) ..........................................................................10, 23, 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ............................17, 18

Helmer v. Doletskaya, 290 F. Supp. 2d 61 (D.D.C. 2003), rev'd on other grounds,
      393 F.3d 201 (D.C. Cir. 2004)...................................................................................................7

Henderson v. Milobsky, 595 F.2d 654 (D.C. Cir. 1978) ..................................................................16

Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C. 1998)..............................................................16

*International Shoe Co. v. Washington, 326 U.S. 310 (1945) ............................................... passim

Jacobsen v. Oliver, 201 F. Supp. 2d 93 (D.D.C. 2002) .....................................................................6

Land v. Dollar, 330 U.S. 731 (1947) .................................................................................................7

*Manifold v. Wolf Coach, Inc., 231 F. Supp. 2d 58 (D.D.C. 2002) .................................................14

Manton v. California Sports, Inc., 493 F. Supp. 496 (N.D. Ga. 1980)...........................................19

McGee v. International Life Insurance Co., 355 U.S. 220 (1957) .............................................24, 25

Munchak Corp. v. Riko Enterprises, Inc., 368 F. Supp. 1366 (M.D.N.C. 1973) ..........................19

Mwani v. bin Laden, 417 F.3d 1 (D.C. Cir. 2005)......................................................................8, 23

Ning Ye v. Hong Bao Zhang, No. 05-00832, 2006 WL 1102832
      (D.D.C. Mar. 31, 2006)...........................................................................................................25

Omni Capital International v. Rudolf Wolff & Co., 484 U.S. 97 (1987)........................................23

Peluzzo v. Leiboff, No. 00-7604, 2004 D.C. Super LEXIS 22
      (D.C. Super. Dec. 13, 2004) ....................................................................................................21

Savage v. Bioport, Inc., 460 F. Supp. 2d 55 (D.D.C. 2006) ...........................................................17

Second Amendment Foundation v. U.S. Conference of Mayors,
      274 F.3d 521 (D,C. Cir. 2001)...................................................................................................7

Sol Salins, Inc. v. Sure Way Refrigerated Truck Transportation Brokers, Inc., 510 A.2d
      1032 (D.C. 1986) ......................................................................................................................10

Tonka Corp. v. TMS Entertainment, Inc., 638 F. Supp. 386 (D. Minn. 1985) .......................19, 21

Travelers Health Association v. Virginia ex rel. State Corporation Commission, 339 U.S.
      643 ( 1950)................................................................................................................................25

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) ............................................14

*United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116 (D.C. Cir. 2000) ...................7

*United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55 (D.D.C. 2004) ...............6, 7

*\*Viacom International, Inc. v. Three Star Telecast, Inc.*, 639 F. Supp. 1277
   (D.P.R. 1986) ............................................................................................20

*Willis v. Willis*, 655 F.2d 1333 (D.C. Cir. 1981) .................................................9

*\*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..................24, 25, 26

*\*Zimmerman v. United States Football League*, 637 F. Supp. 46 (D. Minn. 1986).........19

*Zippo Manufacturing Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) ..........21, 22, 23

## STATUTES

28 U.S.C. § 13-1441 ...................................................................................6

28 U.S.C. § 13-1448 ...................................................................................6

28 U.S.C. § 13-1332 ...................................................................................6

D.C. Code § 11-921 ....................................................................................8

D.C. Code § 13-334(a) .............................................................................8, 16, 17

D.C. Code § 13-423(a)(1) ..........................................................................8, 9, 12

D.C. Code § 13-423(a)(3) ...........................................................................8, 15

D.C. Code § 13-423(a)(4) ...........................................................................8, 15

D.C. Code § 13-423(b)..................................................................................9

## MISCELLANEOUS

4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5
   (2007)................................................................................................18

Fed. R. Civ. P. 12(b)(2)..............................................................................1, 6

*Cases chiefly relied upon are indicated with an asterisk.

Defendant Oxygen Media, LLC ("Oxygen"), by undersigned counsel, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, respectfully submits this Memorandum of Points and Authorities and declaration and affidavit in support of its contemporaneously filed motion to dismiss, with prejudice, the Complaint filed by American Youth Symphony ("AYS").

## PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over Oxygen – a Delaware corporation with its principal place of business in New York – because plaintiff's causes of action do not arise from acts by Oxygen in the District – not from business transacted by Oxygen in the District nor from any tortious act that could form the basis for jurisdiction in the District. The alleged "transaction" at issue in this case – a contract for a one-time 30-minute paid programming, or infomercial, spot on Oxygen's cable TV network – was not initiated by Oxygen, but by the unilateral act of the *pro se* plaintiff in this action, Gregory Charles Royal of AYS. AYS, a non-profit with addresses in the District and Virginia, attempted to purchase the paid programming spot, not from Oxygen, but from a third-party media buyer, Back Channel Media, based in Massachusetts. However, the paid program never aired and Back Channel Media refunded to AYS the $6,500 paid for the spot. That plaintiff, in hopes of pitching a non-paid TV show to Oxygen, made unsolicited calls to Oxygen in New York and even briefly visited Oxygen's offices in New York without an appointment does not constitute business transacted by Oxygen in the District sufficient to confer jurisdiction.

Nor is there general jurisdiction over Oxygen in the District of Columbia because Oxygen does not engage in continuous and systematic business in Washington, D.C. And, indeed, the exercise of personal jurisdiction over Oxygen would violate basic due process standards. There are no notable Washington, D.C. interests at stake in this action except that the

District is a convenient forum for the plaintiff.  Oxygen has essentially no contacts with the

District – no offices or other property, no employees, no parent, no subsidiary, no agent for

service or process, no business operations – and, thus, the exercise of jurisdiction over Oxygen in

the District would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.

v. Washington*, 326 U.S. 310, 316 (1945).  Accordingly, the action should be dismissed with

prejudice for lack of personal jurisdiction.

## STATEMENT OF FACTS

Oxygen Media, LLC is a corporation organized and existing under the laws of the state of

Delaware.  *See* Declaration of Fabian F. Milburn, Jr., Esq. ¶ 2 ("Milburn Decl.").[1]  Since Oxygen

was incorporated in 1998, its principal place of business has been located in New York, New

York.  *Id.*  Oxygen's main business operations involve broadcasting the Oxygen 24-hour cable

network, which broadcasts programs of interest to women and is available in the U.S. and the

Caribbean.  *Id.* ¶ 3.  Oxygen's broadcasts are not directed specifically into the District of

Columbia.

Oxygen maintains no office, mailing address, telephone, or registered agent for service of

process in the District of Columbia.  *See id.* ¶ 4.  Oxygen maintains no bank accounts or any

other accounts in the District of Columbia.  *Id.*  Oxygen maintains no business records in the

District of Columbia.  *Id.* ¶ 5.  It does not own, lease, use or otherwise have any interest in any

real property of any kind in the District of Columbia.  *Id.* ¶ 6.  The company has no parent,

subsidiary, affiliate or employees in the District of Columbia, and is not registered or qualified to

do business in the District of Columbia.  *Id.* ¶ 7.  Oxygen's directors and employees do not

regularly travel to the District of Columbia.  *Id.* ¶ 8.  Oxygen does not pay taxes in the District of

---

[1] No entity currently exists by the name "Oxygen Media, Inc.," the defendant identified in the
Complaint.  Milburn Decl. ¶ 2.

Columbia. *Id.* ¶ 9. Oxygen has not been a party to any litigation, other than the instant case –
filed by AYS, not Oxygen – in the District of Columbia. *Id.* ¶ 10. Oxygen has not retained
counsel in the District of Columbia, except in connection with the defense of this *pro se* action,
and has never retained any other professional in the District of Columbia. *Id.*

Oxygen maintains a website – with a server located in New York – for the purpose of
providing information and alerts regarding its cable television network and programming. *Id.* ¶
12. The website also contains promotions, information for advertisers, and offers limited items,
such as DVDs, for sale to individuals who access the site. *Id.* Nothing on the site is specifically
or purposefully directed at residents of the District of Columbia. Oxygen has no current business
with advertising agencies in D.C. for its cable network or its website. *Id.* ¶ 11.

Oxygen's specific contacts with the District as they relate to this case are equally limited.
*Id.* ¶¶ 13-17. This action arises out of *pro se* plaintiff's unilateral attempt to buy from an out-of-
state third party a one-time 30-minute paid programming (*i.e.*, infomercial) spot on the Oxygen
network for $6,500 and his unilateral and unsuccessful efforts to persuade Oxygen to air as
regular unpaid programming an *American Idol*-type music TV show. In attempting to secure the
one-time paid programming spot on Oxygen, AYS communicated not with Oxygen but with
Back Channel Media, a third party media buying company based in Boston, Massachusetts, by
submitting an order on Back Channel Media's website. *Id.* ¶ 13. Plaintiff does not plead, nor is
there any evidence, that AYS's order was placed from the District of Columbia. Back Channel
Media is not an affiliate or subsidiary of Oxygen, nor is it a party to this action. *Id.* Any
payment by AYS for the $6,500 paid programming spot was made to Back Channel Media, not
Oxygen. Id. ¶ 13. Indeed, Back Channel Media returned to AYS, at AYS's request, the $6,500
paid for the paid programming spot and the spot never aired on Oxygen. *Id.* Oxygen never

received any payment from AYS or Back Channel Media for the paid program at issue in this suit. *Id.*

In addition, no Oxygen employee traveled to the District of Columbia for any meeting concerning any AYS program. *Id.* ¶ 14. Any alleged telephone communication between AYS and Oxygen in New York concerning either the paid programming or the *American Idol*-type TV show at issue in this suit was unsolicited by Oxygen, initiated by AYS, not Oxygen, and comprised no more than a few minutes in total. *See* Affidavit of Erica Diaz ("Diaz Aff.") at ¶¶ 2-3; Milburn Decl. ¶ 15; Compl. ¶¶ 8 and 12. Plaintiff does not plead and defendant has no knowledge whether Mr. Royal's unsolicited calls to Oxygen in New York were made in the District of Columbia. On one or two occasions, Oxygen Development Coordinator, Erica Diaz, based in Oxygen's office in New York, returned telephone messages from her office in New York that had been left for her in New York by Gregory Charles Royal. Diaz Aff. ¶ 3; Milburn Decl. ¶ 15. Ms. Diaz, knowing little or nothing about the reason for Mr. Royal's call or the nature of Mr. Royal's business, left no more than a short voicemail with her name and number. Diaz Aff. ¶ 3.

Upon belief, the one and only time any Oxygen employee spoke directly with Mr. Royal via the telephone was a brief, two-minute call *made by Mr. Royal* to Ms. Diaz in New York. Diaz Aff. ¶ 2. But upon receiving Mr. Royal's call, Ms. Diaz informed Mr. Royal that Oxygen was not interested in music programming. *Id.* The Complaint does not plead and Ms. Diaz does not know whether Mr. Royal was in the District of Columbia when he initiated that telephone call to Oxygen in New York. *Id.*

In May or June 2007, Mr. Royal appeared at Oxygen's offices in New York, New York, uninvited and without an appointment. *Id.* ¶ 4. Unclear who he was or what he wanted, Ms.

Diaz met him at Oxygen's reception area. *Id.* Mr. Royal gave Ms. Diaz a DVD and indicated

that he wanted to air the contents of the DVD on Oxygen's network. *Id.* Ms. Diaz informed Mr.

Royal that Oxygen was not interested in music programs. *Id.* Mr. Royal told Ms. Diaz that he

was already airing on Oxygen's network. *Id.* Ms. Diaz reiterated that Oxygen was not

interested. *Id.* The encounter at Oxygen's offices in New York lasted no more than five

minutes. *Id.* At no time did Ms. Diaz ever have any in-person contact with Mr. Royal or AYS in

the District of Columbia.

On or about May 14, 2007, Oxygen received a letter from a New York lawyer alerting

Oxygen that AYS's program "American Hot Musician" may contain video, audio and/or images

owned by a third party and not licensed or cleared for use. Milburn Decl. ¶ 17. On June 1, 2007,

upon learning that AYS was using on its website Oxygen's logos and marks to promote a

television show – an *American Idol*-type competition for instrumental musicians that AYS

claimed, incorrectly, would air on Oxygen's network – Oxygen's Senior Vice President of

Business Operations in New York, Fabian F. Milburn, Jr., Esq., sent from New York a cease and

desist letter to America's Hot Musician c/o AYS. *Id.* The letter was sent via Federal Express

simultaneously to an AYS address in the District of Columbia and an AYS address in Falls

Church, Virginia. *Id.* Mr. Milburn requested that AYS cease its unauthorized use of Oxygen's

marks on AYS's website. *Id.* Plaintiff responded by e-mail on June 11, 2007. Diaz Aff. ¶ 5.

That e-mail did not indicate from what state it was sent. *Id.* Later, Mr. Milburn sent a single-

line follow-up e-mail to AYS in response, thanking AYS for complying with Oxygen's request.

*Id.* The Complaint does not allege and Oxygen does not know whether the e-mail was received

by AYS in D.C., Virginia or elsewhere. However, AYS responded to Mr. Milburn by e-mail on

June 14, 2007 and requested that payment for the paid program be refunded to AYS, not to any

D.C. address, but to an address in Falls Church, Virginia. *Id.*

On June 12, 2007, AYS filed this suit against Oxygen in the D.C. Superior Court, Civil Action No. 07-0003999, asserting claims for (1) breach of contract/promise; (2) deceptive and unfair business practices; (3) negligence; and (4) tortious conduct generally. *See* Compl. AYS seeks general, punitive, compensatory, special and future damages in the amount of $100 million. *See* Compl.

Plaintiff purported to serve Oxygen by mailing a copy of the Summons and Complaint to Oxygen's corporate offices in New York by certified or registered mail. Oxygen removed the case to this Court under 28 U.S.C. §§ 13-1441, 1448 and 1332 on July 18, 2007.[2] The parties entered into a consent motion, which the Court granted, providing Oxygen until August 3, 2007 to answer or otherwise respond to the Complaint. Oxygen now moves under Federal R. Civ. P. 12(b)(2) to dismiss this action for lack of personal jurisdiction over Oxygen in the District of Columbia.

## ARGUMENT

### I.    PERSONAL JURISDICTION STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of proof" that a defendant is subject to the court's jurisdiction. *United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 60 (D.D.C. 2004) (citing *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002)); *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet this burden, "[a] plaintiff must establish a factual basis for the court's exercise of personal jurisdiction ... [by] alleg[ing] specific facts connecting the defendant with the forum." *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 32-33 (D.D.C.

---

[2] Subject matter jurisdiction is based on diversity of citizenship because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

2007); *Second Amendment Found. v. United States Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws"); *see also Helmer v. Doletskaya*, 290 F. Supp. 2d 61, 66 (D.D.C. 2003), *rev'd on other grounds*, 393 F.3d 201 (D.C. Cir. 2004); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 428 (D.C. Cir. 1991). Bare allegations and conclusory statements are insufficient. *Smithfield Foods*, 332 F. Supp. 2d at 60; *Second Amendment Found.*, 274 F.3d at 524.

When a defendant timely objects to a court's personal jurisdiction, the "general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). When evaluating a motion to dismiss under Rule 12(b)(2), a court need not treat all of plaintiff's allegations as true, *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000), and is generally permitted to look outside the pleadings to determine if a plaintiff has established a *prima facie* showing of personal jurisdiction. *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 223 n.1 (D.D.C. 2005); *Smithfield Foods,* 332 F. Supp. 2d at 59-60. In Rule 12(b)(2) motions, unlike Rule 12(b)(6) motions, "courts are free to consider relevant materials outside the pleadings." *Smithfield Foods,* 332 F. Supp. 2d at 59-60 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). *Philip Morris*, 116 F.3d at 120 n.4 (the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts").

## II.    THERE IS NEITHER SPECIFIC NOR GENERAL JURISDICTION OVER OXYGEN

Determining whether a court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis. First, the requirements of the long arm statute must be satisfied, and second, the exercise of jurisdiction must comport with due process. D.C. courts have

consistently held that D.C.'s long arm statute is co-extensive with the due process clause of the federal constitution. *Mwani v. bin Laden*, 417 F.3d 1, 9 (D.C. Cir. 2005). Therefore, if the exercise of jurisdiction would violate due process, the D.C. long arm statute does not authorize the exercise of jurisdiction over a defendant.

AYS fails to allege any supportable basis that would warrant personal jurisdiction over Oxygen under D.C.'s long arm statute – under either D.C. Code § 13-423(a)(1) (the specific jurisdiction "transacting business" prong), D.C. Code § 13-423(a)(3)-(4) (the specific jurisdiction "tortious injury" prongs) or § 13-334(a) (the general jurisdiction "doing business" prong).[3] Moreover, because there exist virtually no contacts between Oxygen and the District of Columbia, this Court's exercise of such jurisdiction would violate the Due Process Clause of the U.S. Constitution.

AYS's Complaint alleges only that jurisdiction was proper in the Superior Court for the District of Columbia pursuant to D.C. Code § 11-921, which provides for that court's general jurisdiction. AYS does not specifically allege that personal jurisdiction is proper in the District of Columbia, or set forth specific facts – other than plaintiff's own activities (which may or may not have occurred in the District) – showing that jurisdiction over Oxygen in D.C. is warranted.

---

[3]    The D.C. Court of Appeals has explained:

> Personal jurisdiction over foreign corporations is authorized by statute in the District of Columbia in two ways. Under the District's long arm statute, a foreign corporation, acting directly or through an agent, is subject to personal jurisdiction in the District if, among other things, it has "transact[ed] any business" here. D.C. Code § 13-423(a)(1) (2001). When jurisdiction is based on this section, the claim for relief must "arise[] from" the acts conferring jurisdiction over the defendant. D.C. Code § 13-423(b). This is sometimes referred to as specific jurisdiction. In the alternative, D.C. Code § 13-334(a) may confer general jurisdiction over corporations "doing business" in the District of Columbia.

*Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006) (footnote omitted).

III.    **THE "TRANSACTING BUSINESS" PRONG OF THE DISTRICT OF COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR SPECIFIC JURISDICTION OVER OXYGEN**

Plaintiff has not set forth facts showing that its claim *actually arises from* business transactions conducted in the District of Columbia, and therefore this Court does not have specific personal jurisdiction pursuant to § 13-423(a)(1). The D.C. long arm statute provides personal jurisdiction over non-residents "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). It is limited, however, by § 423(b), which states that "only a claim for relief arising from the acts enumerated in this section may be asserted against him." Thus "section 423(b) . . . bar[s] . . . claims unrelated to the acts forming the basis for personal jurisdiction." *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981); *Brunson*, 404 F. Supp. 2d at 228; *see also COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (stating that part of what a plaintiff needs to show is that "the claim arose from the business transacted in the District (so-called specific jurisdiction)"). Therefore, AYS must prove – but cannot – "first, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.' " *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe*, 326 U.S. at 316).

A.    **Plaintiff's Claim Does Not Arise From Business Transacted by Oxygen in the District of Columbia Sufficient to Satisfy the Requirements of § 13-423(a)(1) for Specific Jurisdiction**

Plaintiff's claim does not arise from Oxygen's business transactions conducted in the District of Columbia. "While, of course, every 'transaction of business' will require some sort of 'purposeful' conduct, not every purposeful act will necessarily amount to transacting business." *Acker v. Royal Merchant Bank & Finance Co.*, No. 98-00392, 1999 WL 1273476, at *3 (D.D.C.

Feb. 10, 1999), *aff'd*, 203 F.3d 51 (D.C. Cir. 1999). The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party of a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). "Jurisdiction is proper [only] where the contacts [between the defendant and the forum] proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (emphasis in the original) (citations and quotation marks omitted). *Accord Sol Salins, Inc. v. Sure Way Refrigerated Truck Transp. Brokers, Inc.*, 510 A.2d 1032, 1035 (D.C. 1986) (rejecting the idea that personal jurisdiction under § 13-423(a)(1) may be based on "the unilateral activity of another party or a third person").

Here, the claim arises from plaintiff's unilateral acts alone. The "transaction" at issue was initiated not by Oxygen, but by the act of AYS, when, from an undetermined jurisdiction, AYS, on the website of a third-party, Back Channel Media, based in Massachusetts, placed an order to purchase paid programming time on Oxygen's network. Milburn Decl. ¶ 13. Oxygen was not a party to that transaction, never received payment for the paid program and, indeed, never aired the paid program.[4] *Id.* A plaintiff may not depend on its own activity to establish the existence of defendant's minimum contacts with the forum. *Gibbons & Co. v. Roskamp Inst.*, No. 06-720, 2006 U.S. Dist. LEXIS 60762, at *6 (D.D.C. Aug. 28, 2006) (citing *Hanson*, 357 U.S. at 253) ("a plaintiff's unilateral activities . . . do not satisfy the requirement that the defendant itself have some minimum contact with the District"). Even if the Back Channel

---

[4] Oxygen was within its rights not to air the paid program because, *inter alia*, on May 14, 2007, Oxygen received a cease and desist letter from a lawyer in New York on behalf of a third party alleging that AYS's show "American Hot Musician" may contain video, audio or images not licensed or cleared for use. *See* Milburn Decl. ¶ 17. Oxygen also learned soon thereafter that AYS was using Oxygen's marks and logo without Oxygen's consent and promoting another program – an *American Idol*-type reality TV show – as appearing falsely on Oxygen's network. *Id.* After receipt of Oxygen's cease and desist letter, AYS indicated by e-mail that it wanted its $6,500 payment refunded. *Id.*

Media's website was accessed from the District of Columbia, AYS's unilateral actions to secure

paid programming on the Oxygen network through the website of a third party in Massachusetts

certainly does not constitute purposeful availment of the District of Columbia by Oxygen –

particularly where Oxygen was not a direct party to the transaction. Accordingly, AYS's

assertion of personal jurisdiction over Oxygen does not satisfy the requirements for specific

jurisdiction.

Moreover, AYS's allegations that Oxygen engaged in "several communications" with

AYS (Compl. ¶ 8), including a phone call on June 5, 2007 (Compl. ¶ 12), concerning AYS's

paid programming on Oxygen's network does not support jurisdiction. Such incidental phone

conversations are insufficient to establish personal jurisdiction over Oxygen because they do not

constitute "transacting business." In *Burger King*, 471 U.S. at 476, the Supreme court observed

that because a substantial amount of modern business is transacted solely by mail and wire

communications across state lines, there is less need to be physically present in the state where

the business is being conducted. However, the *Burger King* court did not rest its finding of

personal jurisdiction solely on mail and wire communications between the parties. Rather, the

court considered the totality of the circumstances, including the fact that the nonresident

defendant's business grew directly out of a contract which had a substantial connection with the

resident plaintiff's state, the nonresident defendant specifically reached out to the plaintiff to

purchase the franchise, and the nonresident defendant entered into a 20-year contractual

relationship with the plaintiff.

While this Court has recognized cases where telephone calls may constitute "transacting

business" for purposes of establishing personal jurisdiction under the District's long arm statute,

such telephone calls are considered in conjunction with other contacts – contacts absent here. In

11

*Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992), for example, the plaintiff alleged that the defendants were engaged in a conspiracy to sell armed helicopters to Saudi Arabia. *Id.* at 69-70. Certain defendants allegedly owned and maintained business and residential property in the District, made numerous trips to the District in furtherance of the alleged conspiracy, and sought aid from a District corporation to facilitate laundering bribes passed to the Saudis. In addition, the plaintiff alleged that the defendants "made *countless* phone calls and mailings into the District" directly related to the alleged conspiracy. *Id.* at 72 (emphasis added). The court found that the "telephone calls and mailings to Washington, D.C. constitute 'transacting business' under section 13-423(a)(1)." But, unlike this case, *Dooley* involved "a plethora of other contacts with the District, aside from the phone calls and mailings... ."

In *Brunson*, 404 F. Supp. 2d at 233, a case more akin to this one, the court found that where defendant did not own property in the District, never went to the District to further the transaction, and never contacted or used a third-party District corporation in connection with the transaction, mere phone calls and mailings, which, as here, were "far from 'countless,' " were insufficient to establish personal jurisdiction. Similarly, in *Gibbons*, the court held that a defendant Florida corporation had no minimum contacts within the District, despite a contract with a D.C. corporation and a course of dealing that included the exchange of between 50 and 75 e-mails and more than 75 telephone calls, as well as travel to and meetings in the District. *Gibbons*, 2006 U.S. Dist. LEXIS 60762, at *10. The court noted that – like here – Gibbons relied primarily on his own activities in the District, which were insufficient to establish the out-of-state defendant's minimum contacts, and that the e-mails and telephone communications were "incidental to the contract." *Id.* "The mere fact that [the out-of-state defendant] allegedly

retained [the D.C. plaintiff's] professional services, which set into motion [the D.C. plaintiff's] activities within the District, does not without more constitute an invocation [by the out-of-state plaintiff] of the benefits and protections of the District's laws." *Id. See also FC Inv. Group LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007) (holding that defendant's "regular" telephone calls to the District did not satisfy the "transacting business" requirement of the D.C. long arm statute); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075-77 (10th Cir. 1995) (holding that periodic telephone calls and faxes between Nevada and Oregon residents and Utah company in the course of contract negotiations were insufficient to establish minimum contacts with Utah).

In this case, Oxygen had even less contact with the District than the defendants in *Gibbons*, *Brunson*, *FC*, and *Far West*. The alleged contract here involved a one-time payment of $6,500 by AYS to Back Channel Media based in Massachusetts. The paid program was to air one time only for a total 30 minutes. There was to be no long-term relationship between AYS and Oxygen. While AYS alleges that some "negotiations" took place in part by telephone and email, these "negotiations" amounted to one brief telephone conversation *initiated by Mr. Royal* from an undetermined location into New York in which an Oxygen employee told Mr. Royal that Oxygen has no interest in music programs, and a surprise visit by Mr. Royal to Oxygen's offices *in New York*, which lasted fewer than five minutes and in which he was again told that Oxygen had no interest in music programs. Diaz Aff. ¶ 2. No Oxygen employees were involved in any negotiations in the District of Columbia or were present in the District at any time relevant to this litigation. Diaz Aff. ¶ 4; Milburn Decl. ¶ 18. Accordingly, Oxygen's minimal contacts with the District do not constitute a deliberate and voluntary association with the forum that rises to the level of transacting business within the District as would be necessary to invoke the jurisdiction

13

of this Court.

**B.    Oxygen's Cease and Desist Letter to Defendant Does Not Constitute Purposeful Transacted Business Within the District of Columbia**

Oxygen's cease and desist letter – sent from New York to AYS in Virginia and the District of Columbia – does not constitute "qualitatively significant" conduct in the District sufficient to confer jurisdiction and, indeed, is not the act from which this action arises. *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995). While the Supreme Court has indicated – in dicta – that a single act can support jurisdiction, that act must be one in which the defendant "creates a 'substantial connection' with the forum." *Burger King*, 471 U.S. at 475 n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). With no "mechanical test" to apply, *Burger King*, 471 U.S. at 478 (quoting *International Shoe*, 326 U.S. at 319), this Court has held that it "must consider the 'quality and nature' of [a defendant's] contacts with this jurisdiction, *Burger King*, 471 U.S. at 480, and whether exercising personal jurisdiction offends the 'traditional notions of fair play and substantial justice.'" *Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 62 (D.D.C. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316).

In *Manifold*, this Court found that where a defendant's business transaction to sell a news van to a television station in the District involved negotiations between television station representatives in the District and defendant's representatives in Massachusetts – including a meeting in the District between the defendant's national sales representative and the television station – and the end result of the contract was a new van to be used specifically for news gathering in the District, defendant's contacts were "qualitatively significant." *Manifold*, 231 F. Supp. 2d at 62. The Court weighed the value of the transaction, $200,417 – far more than the $6,500 at issue in this case – when determining the significance of defendant's conduct. *Id.*

By contrast, in this case, Oxygen did not engage in any, let alone significant, negotiations

14

with AYS leading to the issuance of the cease and desist letter. Further, Oxygen never met with the plaintiff in the District. And, most importantly, the cease and desist letter related to AYS's unauthorized use of Oxygen's marks, not any agreement, or lack thereof, to air the paid program or any other TV show. Therefore, Oxygen's cease and desist letter alone is not sufficiently significant to confer jurisdiction. Moreover, as discussed *infra*, finding personal jurisdiction based on Oxygen's cease and desist letter would offend the "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, because this single act was not "qualitatively significant" enough to constitute purposeful availment of the District.

## IV.  THE "TORTIOUS INJURY" PRONG OF THE DISTRICT OF COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR SPECIFIC JURISDICTION OVER OXYGEN

The "tortious injury" prongs of D.C.'s long arm statute, D.C. Code §§ 13-423(a)(3)-(4), are inapplicable here. The Complaint, while alleging two counts of negligence and tortious conduct generally, does not cite to these provisions as the basis for jurisdiction. More importantly, however, there is no underlying tort at issue here. Nothing alleged on the face of the Complaint establishes that Oxygen caused tortious injury in the District either by an act or omission in the District or by an act or omission outside the District. *See* D.C. Code §§ 13-423(a)(3)-(4). Indeed, AYS has failed to allege any tortious act or omission on the part of Oxygen anywhere, let alone in D.C. If anything, this dispute arises out of an alleged contract for a paid programming spot. Plaintiff's telephone calls, if even made from D.C. to Oxygen in New York, in futile attempts to pitch a TV show to Oxygen, are insufficient acts on the part of Oxygen to confer jurisdiction in the District.

Even if AYS could allege tortious conduct by Oxygen in D.C. under subsections (a)(3)-(4), which it cannot, these subsections do not apply as there is no allegation of any tortious injury actually suffered by AYS in the District. Vague and uncorroborated statements and conclusory

allegations that AYS "*can reasonably expect* to lose its standing in the community" and that "the integrity of its program *can reasonably be expected to suffer* in the public's and business community perception," Compl. ¶ 19, does not suffice. *See Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations.").

What is more, AYS has not alleged any duty on the part of Oxygen or any breach of duty that could cause damage to AYS – the necessary elements of plaintiff's negligence and tort claims. *See, e.g., Henderson v. Milobsky*, 595 F.2d 654 (D.C. Cir. 1978); *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998). In any event, recourse for a contract dispute lies in a legal suit under the contract and not an action in tort. *See Blake Const. Co. v. C. J. Coakley Co.*, 431 A.2d 569 (D.C. 1981). Accordingly, Counts Three and Four of the Complaint – failing as they do to allege specific tortious acts or even any elements of negligence or "tortious conduct generally" – cannot form the basis for personal jurisdiction over Oxygen.

## V.    THERE IS NO BASIS FOR THIS COURT TO EXERCISE GENERAL JURISDICTION OVER OXYGEN

### A.    Oxygen is Not Subject to this Court's General Jurisdiction under § 13-334(a) of D.C.'s Long Arm Statute Because Oxygen Does Not Have "Systematic and Continuous" Business Contacts in this Forum

Subsection § 13-334(a), which authorizes general jurisdiction over the defendant, is similarly inapplicable. "On its face, D.C. Code § 13-334(a) appears to relate only to service of process on foreign corporation. This court, however, has long used § 13-334(a) as a means of 'conferr[ing] jurisdiction upon trial courts here over foreign corporations doing <u>substantial business in the District of Columbia</u> . . . ." *Gonzales*, 891 A.2d at 233 (D.C. 2006) (quoting *Guevara v. Reed*, 598 A.2d 1157, 1159 (D.C. 1991) (emphasis added)). Section 13-334(a) provides:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business,

> or, when he is absent and can not be found, by leaving a copy at the principal
> places of business in the District, or, where there is no such place of business, by
> leaving a copy at the place of business or residence of the agent in the District,
> and that service is effectual to bring the corporation before the court.

D.C. Code § 13-334(a).

General jurisdiction § 13-334(a) requires that a "non-resident defendant has engaged in 'continuous and systematic general business contacts' in the forum," *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 50 (D.D.C. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)), *appeal dismissed*, No. 03-7166, 2003 WL 22971974 (D.C. Cir. Dec. 11, 2003), and that "such systematic contacts demonstrate a 'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.' " *Id.* (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981))); *see, e.g., Gonzalez*, 891 A.2d at 233 ("the defendant corporation must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here").

The requirement that a defendant's contacts with the forum be "continuous and systematic" means, among other things, that defendants with merely "sporadic" contacts – such as Oxygen – are *not* subject to the general jurisdiction of the forum. *E.g., El-Fadl,* 75 F.3d at 675; *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 59 (D.D.C. 2006); *Atlantigas*, 290 F. Supp. 2d at 53.

Moreover, it is not simply the *quantity* of contacts that matter, but also the *quality* of those contacts which are analyzed by the reviewing court. The Supreme Court's decision in *Helicopteros*, explicates the quality of contacts necessary for general jurisdiction. *Helicopteros* was a wrongful death action brought in a Texas state court against a Colombian corporation and

others for an accident that took place in Peru when one of the defendant's helicopters crashed.

Four Texas contacts were identified: (1) the defendant's chief executive officer flew, at the

request of the consortium, to Houston to negotiate the transportation contract; (2) the defendant

purchased most of its helicopters over a period of years from the Bell Helicopter Company in

Fort Worth, Texas; (3) it sent prospective pilots and management personnel for training to Bell in

Texas; and (4) the checks paying for its transportation services were drawn on a Texas bank and

paid into a New York account. *Helicopteros,* 466 U.S. at 416.

The *Helicopteros* Court concluded that the defendant's contacts with Texas did not

constitute continuous and systematic activity, and that it was inconsistent with the Due Process

Clause for the Texas court to assert general jurisdiction. 466 U.S. at 418-19. "[T]he Court's

rejection of each of Helicopteros' contacts with the forum state as not significant, as well as its

failure to consider the effect of the aggregate of those contacts, suggests very strongly that the

threshold contacts required for a constitutional assertion of general jurisdiction over a

nonresident defendant are very substantial, indeed." 4 Charles Alan Wright & Arthur R. Miller,

*Federal Practice & Procedure* § 1067.5 (2007).

Here, Oxygen's contacts with D.C. are limited and unrelated to this litigation. By no

means do they amount to continuous or systemic contacts with the forum. Oxygen is a Delaware

corporation doing business in New York. Milburn Decl. ¶ 2. The only contact that Oxygen had

with the District is that it broadcasts cable television programs available to subscribers

throughout the U.S., advertises throughout the U.S., and maintains a website that can be accessed

from any jurisdiction. *Id.* ¶¶ 3, 12. None of these contacts form the basis or bear any relation to

plaintiff's claims. Oxygen maintains no office, mailing address, telephone, or registered agent

for service of process in the District of Columbia. *Id.* ¶ 4. Oxygen maintains no bank accounts

18

or any other accounts in the District of Columbia and maintains no business records in the District of Columbia. *Id.* ¶ 5. The Company does not own, lease, use, or otherwise have any interest in any real or personal property of any kind in the District of Columbia. *Id.* ¶ 6. Oxygen has no employees, parents, subsidiaries or affiliates in the District of Columbia, and is not registered or qualified to do business in the District of Columbia. Id. ¶ 7. Oxygen does not and has not paid taxes in the District of Columbia. *Id.* ¶ 9. Oxygen has not been party to any litigation, other than the instant case, in the District of Columbia. *Id.* ¶ 10. The Company has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia. *Id.* Accordingly, the high threshold for "continuous and systematic contacts" has not been even remotely satisfied here.

**B.    Defendant's Broadcast of its Cable Network into the District of Columbia Does Not Create General Jurisdiction**

Although Oxygen's cable network is broadcast nationwide, including to certain subscribers in the District of Columbia, such broadcasting does not constitute sufficient contacts for personal jurisdiction, particularly where this action does not arise from any program that was ever even broadcast by Oxygen period, let alone broadcast into the District of Columbia. Milburn Decl. ¶ 13. "Where a plaintiff's cause of action does not arise from television broadcasts into a state, the broadcasts do not constitute sufficient contacts for personal jurisdiction." *Zimmerman v. United States Football League*, 637 F. Supp. 46, 48 (D. Minn. 1986) (citing *Manton v. California Sports, Inc.*, 493 F. Supp. 496, 498 (N.D. Ga. 1980), *Munchak Corp. v. Riko Enterprises, Inc.*, 368 F. Supp. 1366, 1374 (M.D.N.C. 1973)); *cf. Tonka Corp. v. TMS Entertainment, Inc.*, 638 F. Supp. 386, 389-90 (D. Minn. 1985) (holding that, where plaintiff's cause of action *was based on television broadcast* in state, such broadcast may

19

constitute sufficient jurisdictional contacts) (emphasis added).

A company's television broadcast into a state may only be considered as one factor among other contacts to establish personal jurisdiction. For example, in *Viacom International, Inc. v. Three Star Telecast, Inc.*, 639 F. Supp. 1277 (D.P.R. 1986), a defendant broadcasting corporation located in St. Croix, U.S. Virgin Islands – defending a claim that it had defaulted on payment for licensing agreements entered into with plaintiff – asserted that it had no minimum contacts with Puerto Rico and, therefore, jurisdiction there was improper. The district court observed that although the defendant was not authorized to do business in Puerto Rico, its signal was received there. *Id.* at 1280. In addition, defendant earned ten percent of its revenue from its advertising contracts with Puerto Rican advertisers. *Id.* Indeed, one of defendant's two sole stockholders personally solicited advertising in Puerto Rico, along with another agent. *Id.* What is more, defendant's corporate president lived and worked in Puerto Rico, and his office there had been used for conducting defendant's corporate business. *Id.* In light of the combination of contacts, the district court found that defendant "ha[d] been carrying on a 'continuous and systematic but limited part of its general business' within Puerto Rico," and denied defendant's motion to dismiss. *Id.*

Unlike the defendant in *Viacom,* Oxygen has no offices or employees resident in the District of Columbia. Milburn Decl. ¶¶ 4, 7. Oxygen has no current business with advertising agencies resident in the District, *id.* ¶ 11, and does not specifically solicit ads from residents of the District of Columbia. Most importantly, unlike *Tonka,* Oxygen's broadcasts into the District of Columbia are entirely unrelated to the allegations in plaintiff's Complaint, which arise from an alleged contract for a 30-minute paid programming spot that never aired and Mr. Royal's misguided hopes that that the paid programming spot might lead to his very own *American Idol-*

type TV show on Oxygen. Accordingly, this Court lacks general personal jurisdiction over

Oxygen.

### C.    The Presence of Oxygen's Website Does Not Constitute "Substantial Business" Within the District of Columbia

The mere fact that Oxygen maintains a website accessible from the District of Columbia

is not sufficient to confer jurisdiction because Oxygen does not use its website to do business

with District of Columbia residents in any directed or continuous and systematic way. Oxygen

maintains a website for the limited purpose of providing information regarding its cable network.

Milburn Decl.¶ 12. Oxygen does not engage in more than limited commercial sales via its

website and various promotional offers. *Id.* This action does not arise from or bear any

relationship to Oxygen's website.

It is well-established that a passive website does not constitute purposeful availment of a

jurisdiction. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347-50 (D.C. Cir.

2000); *Peluzzo v. Leiboff*, No. 00-7604, 2004 D.C. Super. LEXIS 22 (D.C. Super. Dec. 13,

2004), ("[a] passive Web site that does little more than make information available to those who

are interested in it is not grounds for the exercise of personal jurisdiction"). *Id.* at *11-12

(internet citation omitted). But "[e]ven if interactive, the website must be used by a defendant to

do business with residents in the forum state in a *continuous* and *systematic way*" – contacts

absent here. *Id.* "Mere access by forum residents to a non-resident defendant's website is not

enough, by itself to establish minimum contact with the forum." *Atlantigas,* 290 F. Supp. at 51-

52 (emphasis added). "With interactive websites, 'the exercise of jurisdiction is determined by

examining the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site.'" *Peluzzo,* 2004 D.C. Super LEXIS at *12 (citing *Zippo Mfg. Co. v.

Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

21

Oxygen's website does not constitute "continuous and systematic" contacts with the District because Oxygen does not engage in continuous transactions via its website with District of Columbia residents. In *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002), the D.C. Circuit considered whether defendant Ameritrade's contacts were sufficiently "continuous and systematic" to establish general personal jurisdiction over the company. In particular, the court contemplated the extent to which Ameritrade's online brokerage services website constituted transacting business in the District. Specifically, the court noted that Ameritrade website users could open accounts online, transmit funds, use accounts to buy and sell securities, borrow from Ameritrade, and pay Ameritrade commissions and interest. *Id.* Further, the court found that Ameritrade itself used the site to transmit electronic confirmations, account statements, and financial and product information to customers. *Id.* In addition, the court noted that through the electronic activity on the Ameritrade website, Ameritrade and its District of Columbia customers "enter into binding contracts, the customers become the owners of valuable securities, and Ameritrade obtains valuable revenue." *Id.* at 512-13. The court emphasized that "the fact that Ameritrade also offers its customers the alternative of accomplishing virtually all of the above-described transactions by ordinary mail or telephone," demonstrated "that nothing about the Ameritrade website need alter [the court's] traditional approach to personal jurisdiction." *Id.* at 513. Accordingly, the court found that through its website, "Ameritrade is doing business in the District of Columbia by continuously and systematically 'entering into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.' " *Id.* at 513 (quoting *Zippo,* 952 F. Supp. at 1124).

By contrast, the Oxygen website is far more passive. While it links to other sites that

may be more interactive, it does not permit users to open accounts, become owners of valuable

assets, borrow from Oxygen, or pay Oxygen commissions or interest.  Nor does the Oxygen

website transmit account statements to website users.  To the contrary, other than providing

general information about its programming, Oxygen offers promotions and limited items for sale

to website users but it does not direct its website specifically to D.C. residents or engage in any

continuous course of conduct with D.C. residents via its website.  Oxygen's website is

distinguishable from the highly interactive and commercial Ameritrade website considered in

*Gorman*, and does not create general personal jurisdiction over Oxygen in the District.

## VI.    THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD VIOLATE DUE PROCESS

Under the due process requirement of *International Shoe,* the exercise of jurisdiction may

not offend "traditional notions of fair play and substantial justice."  On this point:

> [T]he determination of the reasonableness of the exercise of jurisdiction in each
> case will depend on an evaluation of several factors.  A court must consider the
> burden on the defendant, the interests of the forum State, and the plaintiff's
> interest in obtaining relief.  It must also weigh in its determination "the interstate
> judicial system's interest in obtaining the most efficient resolution of
> controversies; and the shared interest of the several States in furthering
> fundamental substantive social policies."

*Asahi Metal Indus. Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 113

(1987) (plurality opinion) (citations omitted).  There must be a constitutionally sufficient

relationship between the defendant and the forum, and a basis for the defendant's amenability to

service of summons.  *See Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 112

(D.D.C. 2006); *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005).  These requirements stem

from the Due Process Clause of the Constitution and are a restriction on judicial power as a

matter of individual liberty.  *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97

(1987).

The due process analysis consists of three parts; the defendant must (1) "purposefully

avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253; and (2) "reasonably anticipate being haled into court" in the forum state, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); finally, (3) the "suit cannot offend traditional notions of fair play and substantial justice," *International Shoe Co.*, 326 U.S. at 316. In addition, the minimum contacts "must come about by an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (emphasis in original). Therefore, it is vital that due process considerations be reviewed on a case-by-case basis before personal jurisdictions can be found to exist over a defendant. *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs., Inc.*, 355 A.2d 808, 811 (D.C. 1976) ("the jurisdictional issue must be resolved on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for jurisdiction"); *Doe I v. Israel*, 400 F. Supp. 2d 86, 109 (D.D.C. 2005) ("the D.C. long arm statute only goes as far as the Due Process Clause will permit.")

A.    **Oxygen Did Not Purposefully Avail Itself of the District of Columbia**

In order to satisfy the foreseeability component of the due process analysis, the Supreme Court held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. Applying this test, the Court has found that a number of situations satisfy the "purposeful availment" requirement so as to allow a court to exercise specific personal jurisdiction over a foreign defendant. In *McGee*, 355 U.S. at 223, the Supreme Court held that specific personal jurisdiction is proper in a case where "the suit was based on a contract which had substantial connection with [the forum]." Additionally, the Court held that a court may exercise specific personal jurisdiction over a foreign defendant where the defendant has engaged in "continuing relationships and obligations"

with citizens of the forum. *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339

U.S. 643, 647 (1950).

In the present case, however, as discussed above, the single "transaction" was unilaterally

initiated by AYS by purchasing air time on Oxygen via a third-party, Back Channel Media.

Because AYS cannot establish a substantial and continuing relationship between Oxygen and the

District of Columbia and has failed to demonstrate how jurisdiction in this forum would

otherwise be fundamentally fair, this Court's exercise of jurisdiction over Oxygen would offend

the requirements of the Due Process Clause.

**B.    Fair Play and Substantial Justice**

Beyond showing that the terms of the long arm statute are satisfied, which plaintiff has

failed to do, plaintiff also has failed to show that the exercise of personal jurisdiction in this case

does not exceed the permissible bounds of the Due Process Clause.  Under this standard, "the

defendant's conduct and connection with the forum state [must be] such that he should

reasonably anticipate being haled into court there." *Ning Ye v. Hong Bao Zhang*, No. 05-00832,

2006 WL 1102832, at *3-4 (D.D.C. Mar. 31, 2006) (citing *World-Wide Volkswagen*, 444 U.S. at

297).

The burden on Oxygen to defend this action in the District of Columbia would be great.

Oxygen is a company doing business in New York that has no real and continuing connection

with the District.  Oxygen has not been party to any litigation, other than the instant case, in the

District of Columbia.  Milburn Decl. ¶ 10.  Oxygen has not retained counsel in the District of

Columbia, except in connection with this action against it, and has never retained any other

professional in the District of Columbia. *Id.*

The interests of the forum – the District – in this matter are slight.  The action is brought

here for one reason only.  AYS and Mr. Royal are based either in the District or in Virginia, and

thus the District is a very convenient forum *for the plaintiff.* This consideration does not weigh in the determination of whether this action constitutes fair play with regard *to the defendant.* There is no inherent reason why District of Columbia law should be applied in this case, and certainly none why Oxygen should be haled into court in D.C.

By the same token, there is no reason to believe that interstate interests would be served by adjudicating the case against Oxygen in the District of Columbia. The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen,* 444 U.S. at 297. Oxygen had no reason to foresee that it would be sued on such a tenuous basis in the District of Columbia.

**CONCLUSION**

For the foregoing reasons, Oxygen respectfully requests that this Court enter an Order granting Defendant Oxygen Media, Inc.'s Motion and dismiss this case with prejudice for lack of personal jurisdiction.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton /s/
Constance M. Pendleton (DC Bar No. 456919)
conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006-3402
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
conniependleton@dwt.com
lisazycherman@dwt.com

Attorneys for Defendant Oxygen Media, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 3rd day of August, 2007, a copy of the foregoing Motion to Dismiss and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss was served electronically and by first-class mail, postage pre-paid, upon:

Mr. Gregory Charles Royal
American Youth Symphony
262 16th Street, SE, Suite 3
Washington, D.C.  20003


_Constance M. Pendleton /s/_____
Constance M. Pendleton

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| .v. | ) | **No. 1:078-cv-01280 (JDB)** |
| | ) | |
| **OXYGEN MEDIA, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF FABIAN MILBURN**

I, Fabian F. Milburn, Jr., Esq., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

    1.     I am the Senior Vice President of Business Operations at Oxygen Media, LLC ("Oxygen"). I work in Oxygen's New York offices at 75 Ninth Avenue, New York, NY 10011. I make this declaration in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

    2.     Oxygen is a corporation organized and existing under the laws of the state of Delaware. No entity currently exists by the name of Oxygen Media, Inc. Since 1998, Oxygen's principal offices have been located in New York, New York.

    3.     Oxygen's primary business operations involve broadcasting the Oxygen cable television network, which is available in the U.S. and the Caribbean.

    4.     Oxygen maintains no office, mailing address, telephone, or registered agent for service of process in the District of Columbia.

    5.     Oxygen maintains no bank accounts or any other accounts in the District of Columbia, and maintains no business records in the District of Columbia.

    6.     Oxygen does not own, lease, use or otherwise have any interest in any real property of any kind in the District of Columbia.

7.     Oxygen has no parent, subsidiary, affiliate or employees in the District of Columbia, and is not registered or qualified to do business in the District of Columbia.

8.     Oxygen's directors and employees do not regularly travel to the District.

9.     Oxygen does not pay taxes in the District of Columbia.

10.    Oxygen has never been a party to any litigation, other than the instant case initiated by American Youth Symphony ("AYS"), in the District of Columbia. Oxygen has not retained counsel in the District of Columbia, except in connection with this action brought by AYS, and has never retained any other professional in the District of Columbia.

11.    At no time relevant to this litigation has Oxygen had any business with advertising agencies located in the District of Columbia.

12.    Oxygen owns and operates a website, www.oxygen.com, for the purpose of providing information regarding its cable network. The website also offers promotions and limited items for sale to individuals who access the site. The website's server is located in New York, New York.

13.    In attempting to place the paid programming at issue in this suit, AYS communicated not with Oxygen but with Back Channel Media, a third party media buying company based in Boston. Back Channel Media is not an affiliate or subsidiary of Oxygen or a party to this action. Any payment by AYS would have been made to Back Channel Media, not Oxygen, and I understand Back Channel Media returned to AYS the $6,500 allegedly paid for the paid program. Oxygen never received any payment from AYS or Back Channel Media for the paid program and the paid program never aired on Oxygen's network.

14.    No Oxygen employee traveled to the District of Columbia for any meeting concerning any AYS program.

15.     Any alleged telephone communication between AYS and Oxygen concerning the paid programming at issue in this suit was initiated by AYS, not Oxygen, and comprised no more than a few minutes in total.  Upon information and belief, the telephone contacts alleged in the Complaint, Compl. ¶¶ 8 and 12, amounted to a total of one or two communications in which an Oxygen Development Coordinator, Erica Diaz, based in New York, returned telephone messages left for her by Gregory Charles Royal.  In returning Mr. Royal's calls, Ms. Diaz left no more than a short voicemail with her name and number.  *See* Diaz Aff. ¶ 3.

16.     Upon information and belief, the one and only time any Oxygen employee spoke directly with Mr. Royal via telephone was a brief call *made by Mr. Royal* to Ms. Diaz in New York.  *See* Diaz Aff. ¶ 2.  Upon receiving Mr. Royal's call, Ms. Diaz informed Mr. Royal that Oxygen was not interested in music programming.  *Id.*  Ms. Diaz did not know whether Mr. Royal was in the District of Columbia when he initiated that telephone call.  *Id.*

17.     Around May 14, 2007, Oxygen received a letter from a New York lawyer for a third party stating that AYS's program may contain video, audio and/or images that were not licensed or cleared for use.  On June 1, 2007, upon learning that AYS was using on its website Oxygen's logos and marks to promote a program AYS alleged would air on Oxygen's network, I sent from New York via Federal Express a cease and desist letter to America's Hot Musician c/o AYS at an address in the District of Columbia and an address in Falls Church, Virginia, requesting that AYS cease its unauthorized use of Oxygen's marks on AYS's website.  I later sent a single-line follow-up e-mail to AYS in response to an e-mail from AYS, thanking AYS for complying with Oxygen's request.  AYS responded to me by e-mail on June 14, 2007 and requested that payment for the paid program be refunded to AYS at an address in Falls Church, Virginia.  That was the extent of my contact with Mr. Royal and AYS.

18.     I am not aware of any other communications between AYS and Oxygen in the District of Columbia beyond the communications discussed above.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 2, 2007, at New York, New York.

_____
Fabian F. Milburn, Jr., Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN YOUTH SYMPHONY** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **No. 1:078-cv-01280 (JDB)** |
| ) | |
| **OXYGEN MEDIA, INC.** ) | |
| ) | |
| Defendant. ) | |
| ) | |

### AFFIDAVIT OF ERICA DIAZ

I, Erica Diaz, solemnly affirm under penalty of perjury, that the information herein is true to the best of my knowledge, information and belief:

1.     I am Business Coordinator at Oxygen Media, LLC ("Oxygen"), defendant in this action. I work in Oxygen's New York office at 75 Ninth Avenue, New York, NY 10011. I make this affidavit in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2.     To the best of my recollection, I have spoken directly with Gregory Charles Royal by telephone only once, in the Spring of 2007. That communication was initiated by Mr. Royal to my office in New York and took no more than one or two minutes, during which time Mr. Royal said he wanted to broadcast a program on Oxygen's network and I informed him that Oxygen was not interested in music programming. I do not know whether Mr. Royal was in the District of Columbia when he placed that telephone call.

3.     Prior to that call, Mr. Royal called Oxygen in New York and left me telephone messages on four or fewer occasions. Not knowing the nature of his business, I returned his telephone calls once or twice from New York, leaving a message with my name and telephone number. I never initiated any contacts with Mr. Royal or American Youth Symphony ("AYS").

1

4.    In May or June 2007, Mr. Royal appeared at Oxygen's offices in New York, New York, to my knowledge, uninvited and without an appointment. Unclear who he was or what he wanted, I met him at Oxygen's reception area for less than five minutes. He handed me a DVD and indicated that he wanted to air the contents of the DVD on Oxygen's network. I informed him that Oxygen was not interested in music programs. He told me that he was already airing on Oxygen's network. I reiterated that Oxygen was not interested. At no time did I ever have any in person contact with Mr. Royal or AYS in the District of Columbia.

5.    On June 11, 2007, I received an e-mail from Mr. Royal, also sent to Fabian Milburn, Senior Vice President of Business Operations at Oxygen, in response to Oxygen's cease and desist letter, stating that Mr. Royal had removed Oxygen's logos and trade name from AYS's website. The e-mail did not indicate from what state the e-mail was sent or in what state AYS or Mr. Royal were located.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on August 2, 2007, at New York, New York.

Erica Diaz

Subscribed and sworn to before me this 2ND day of August, 2007

Notary Public

My Commission expires on: MAY 24, 2008

BENRUS DELUNA MADLANGBAYAN
Notary Public - State of New York
No. 01MA6110402
Qualified in New York County
Commission Expires 05/24/2008

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 1:078-cv-01280 (JDB)** |
| | ) | |
| **OXYGEN MEDIA, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER

Upon Consideration of defendant Oxygen Media's Motion to Dismiss for Lack of

Personal Jurisdiction and Memorandum of Points and Authorities and declaration and affidavit in

support thereof, it is hereby

     **ORDERED** that defendant's motion to dismiss be, and hereby is **GRANTED**; it is

further

     **ORDERED** that this action is hereby **DISMISSED** in its entirety with prejudice for lack

of personal jurisdiction.

**SO ORDERED.**

Dated this \_\_\_ day of _____, 2007

                    _____

                    Hon. John D. Bates
                    United States District Judge

Copies to:

Constance M. Pendleton, Esq.
Lisa B. Zycherman, Esq.
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W.
Suite 200
Washington, D.C. 20006-3402

*Counsel for Defendant Oxygen Media, LLC*

Gregory Charles Royal DBA
American Youth Symphony
262 16th Street, SE
Suite 3
Washington, D.C. 20003

*Pro Se for Plaintiff American Youth Symphony*