**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN YOUTH SYMPHONY | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 1:07-cv-01280 (JDB) |
| | ) | |
| OXYGEN MEDIA, INC. | ) | **ORAL HEARING REQUESTED** |
| Defendant. | ) | |

## MOTION TO DISMISS

Defendant Oxygen Media, LLC ("Oxygen") by undersigned counsel, and pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss Plaintiff American Youth Symphony's ("AYS") Complaint, on the grounds of lack of personal jurisdiction. This motion is based on the attached Corrected Memorandum of Points and Authorities, the Corrected Declaration of Fabian Milburn, the Affidavits of Erica Diaz, Bridget Collins, Elizabeth Howie, and Keith Minarik, all papers on file in this action, all matters subject to judicial notice, and such other and further matters as may be presented to the Court prior to the determination of the motion.

Dated this 10th day of August, 2007.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton /s/
Constance M. Pendleton (DC Bar No. 456919)
    conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
    lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006-3402
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499

*Attorneys for Defendant Oxygen Media, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07-cv-01280 (JDB) |
| | ) | |
| **OXYGEN MEDIA, INC.** | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton (DC Bar No. 456919)
    conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
    lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC  20006-3402
Telephone:     (202) 973-4200
Facsimile:      (202) 973-4499

*Attorneys for Defendant Oxygen Media, LLC*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .......................................................................................2

ARGUMENT............................................................................................................7

I.  PERSONAL JURISDICTION STANDARD .................................................7

II.  THERE IS NEITHER SPECIFIC NOR GENERAL JURISDICTION
    OVER OXYGEN............................................................................................8

III.  THE "TRANSACTING BUSINESS" PRONG OF THE DISTRICT OF
    COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR
    SPECIFIC JURISDICTION OVER OXYGEN.............................................10

    A.  Plaintiff's Claim Does Not Arise From Business Transacted by
        Oxygen in the District of Columbia Sufficient to Satisfy the
        Requirements of § 13-423(a)(1) for Specific Jurisdiction .......................10

    B.  Oxygen's Cease and Desist Letter to Defendant Does Not
        Constitute Purposeful Transacted Business Within the
        District of Columbia .................................................................................15

IV.  THE "TORTIOUS INJURY" PRONG OF THE DISTRICT OF
    COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS
    FOR SPECIFIC JURISDICTION OVER OXYGEN.....................................16

V.  THERE IS NO BASIS FOR THIS COURT TO EXERCISE
    GENERAL JURISDICTION OVER OXYGEN .............................................17

    A.  Oxygen is Not Subject to this Court's General Jurisdiction under
        § 13-334(a) of D.C. Long Arm Statute Because Oxygen Does Not
        Have "Systematic and Continuous" Business Contacts in this
        Forum.........................................................................................................17

    B.  Defendant's Broadcast of its Cable Network into the District of
        Columbia Does Not Create General Jurisdiction......................................20

    C.  The Presence of Oxygen's Website Does Not Constitute "Substantial
        Business" Within the District of Columbia ...............................................22

VI.  THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD
    VIOLATE DUE PROCESS...........................................................................24

    A.  Oxygen Did Not Purposefully Avail Itself of the District of Columbia....25

    B.  Fair Play and Substantial Justice..............................................................26

CONCLUSION.......................................................................................................28

i

## TABLE OF AUTHORITIES

### CASES

*Acker v. Royal Merchant Bank & Finance Co.,* No. 98-00392, 1999 WL 1273476
(D.D.C. Feb. 10, 1999), *aff'd,* 203 F.3d 51 (D.C. Cir. 1999) .............................................11

*AMAF International Corp. v. Ralston Purina Co.,* 428 A.2d 849 (D.C. 1981).............................18

*\*Asahi Metal Industry Co. v. Superior Court of California, Solano County,*
480 U.S. 102 (1987 .....................................................................................24, 25

*\*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003),
*appeal dismissed,* No. 03-7166, 2003 WL 22971974,
(D.C. Cir. Dec. 11, 2003)................................................................17, 18, 19, 23

*Blake Construction Co. v. C. J. Coakley Co.,* 431 A.2d 569 (D.C. 1981).....................................17

*\*Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D.D.C. 2005).............................................8, 10, 13

*\*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)....................................................11, 12, 15

*City of Moundridge v. Exxon Mobil Corp.,* 471 F. Supp. 2d 20 (D.D.C. 2007).............................7

*COMSAT Corp. v. Finshipyards S.A.M.,* 900 F. Supp. 515 (D.D.C. 1995) ..................................10

*Crane v. New York Zoological Society,* 894 F.2d 454 (D.C. Cir. 1990) .........................................7

*Doe I v. Israel,* 400 F. Supp. 2d 86 (D.D.C. 2005) ........................................................................25

*\*Dooley v. United Technologies Corp.,* 786 F. Supp. 65 (D.D.C. 1992) ..................................10, 13

*Edmond v. United States Postal Service General Counsel,* 949 F.2d 415
(D.C. Cir. 1991) ...............................................................................................8

*El-Fadl v. Central Bank of Jordan,* 75 F.3d 669 (D.C. Cir. 1996).........................................18, 19

*Environmental Research International, Inc. v. Lockwood Greene
Engineers, Inc.,* 355 A.2d 808 (D.C. 1976) ........................................................25

*Estate of Klieman v. Palestinian Authority,* 467 F. Supp. 2d 107 (D.D.C. 2006) .........................25

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071 (10th Cir. 1995).................................................14

*FC Investment Group LCN v. IFX Markets, Ltd.,* 479 F. Supp. 2d 30 (D.D.C. 2007) .................14

*First Chicago International v. United Exchange Co.,* 836 F.2d 1375 (D.C. Cir. 1988) .................8

*\*Gibbons & Co. v. Roskamp Institute,* No. 06-720, 2006 U.S. Dist. LEXIS 60762
(D.D.C. Aug. 28, 2006)..........................................................................11, 13, 14

*Gonzalez v. Internacional de Elevadores, S.A.,* 891 A.2d 227 (D.C. 2006)..............................9, 18

*Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002) ...................................23, 24

GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2001) ..................22

Guevara v. Reed, 598 A.2d 1157 (D.C. 1991).............................................................................18

Hanson v. Denckla, 357 U.S. 235 (1958) .................................................................11, 25, 26

*Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ............................18, 19

Helmer v. Doletskaya, 290 F. Supp. 2d 61 (D.D.C. 2003), rev'd on other grounds,
    393 F.3d 201 (D.C. Cir. 2004)..........................................................................................8

Henderson v. Milobsky, 595 F.2d 654 (D.C. Cir. 1978)..................................................................17

Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C. 1998)...........................................................17

*International Shoe Co. v. Washington, 326 U.S. 310 (1945) ..................................................... passim

Jacobsen v. Oliver, 201 F. Supp. 2d 93 (D.D.C. 2002) ....................................................................7

Land v. Dollar, 330 U.S. 731 (1947) ................................................................................................8

*Manifold v. Wolf Coach, Inc., 231 F. Supp. 2d 58 (D.D.C. 2002) ...........................................15, 16

Manton v. California Sports, Inc., 493 F. Supp. 496 (N.D. Ga. 1980)..........................................21

McGee v. International Life Insurance Co., 355 U.S. 220 (1957) ...........................................15, 26

Munchak Corp. v. Riko Enterprises, Inc., 368 F. Supp. 1366 (M.D.N.C. 1973) .........................21

Mwani v. bin Laden, 417 F.3d 1 (D.C. Cir. 2005)....................................................................9, 25

Ning Ye v. Hong Bao Zhang, No. 05-00832, 2006 WL 1102832
    (D.D.C. Mar. 31, 2006)...................................................................................................26

Omni Capital International v. Rudolf Wolff & Co., 484 U.S. 97 (1987)......................................25

Peluzzo v. Leiboff, No. 00-7604, 2004 D.C. Super LEXIS 22
    (D.C. Super. Dec. 13, 2004) ......................................................................................22, 23

Savage v. Bioport, Inc., 460 F. Supp. 2d 55 (D.D.C. 2006) ..........................................................19

Second Amendment Foundation v. U.S. Conference of Mayors,
    274 F.3d 521 (D,C. Cir. 2001).......................................................................................7, 8

Sol Salins, Inc. v. Sure Way Refrigerated Truck Transportation Brokers, Inc., 510 A.2d
    1032 (D.C. 1986) ............................................................................................................11

Tonka Corp. v. TMS Entertainment, Inc., 638 F. Supp. 386 (D. Minn. 1985) .............................21

Travelers Health Association v. Virginia ex rel. State Corporation Commission, 339 U.S.
    643 ( 1950)......................................................................................................................26

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995)..................................................15

*United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116 (D.C. Cir. 2000)...................8

*United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55 (D.D.C. 2004) ...................7

*\*Viacom International, Inc. v. Three Star Telecast, Inc.*, 639 F. Supp. 1277
(D.P.R. 1986) .................................................................................................................21

*Willis v. Willis*, 655 F.2d 1333 (D.C. Cir. 1981) ...........................................................10

*\*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..................26, 26, 27

*\*Zimmerman v. United States Football League*, 637 F. Supp. 46 (D. Minn. 1986).........21

*Zippo Manufacturing Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997)...........23, 24

## STATUTES

28 U.S.C. § 13-1441 ..........................................................................................................7

28 U.S.C. § 13-1448 ..........................................................................................................7

28 U.S.C. § 13-1332 ..........................................................................................................7

D.C. Code § 11-921 ...........................................................................................................9

D.C. Code § 13-334(a) ...........................................................................................9, 17, 18

D.C. Code § 13-423(a)(1) .......................................................................................9, 10, 11

D.C. Code § 13-423(a)(3) ............................................................................................9, 16

D.C. Code § 13-423(a)(4) ............................................................................................9, 16

D.C. Code § 13-423(b)..................................................................................................9, 10

## MISCELLANEOUS

4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5
(2007)...........................................................................................................................19

Fed. R. Civ. P. 12(b)(2)...............................................................................................1, 7

*Cases chiefly relied upon are indicated with an asterisk.

Defendant Oxygen Media, LLC ("Oxygen"), by undersigned counsel, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, respectfully submits this Corrected Memorandum of Points and Authorities and declaration and affidavits in support of its contemporaneously filed motion to dismiss, with prejudice, the Complaint filed by American Youth Symphony ("AYS").

## PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over Oxygen – a Delaware corporation with its principal place of business in New York – because plaintiff's causes of action do not arise from acts by Oxygen in the District – not from business transacted by Oxygen in the District nor from any tortious act that could form the basis for jurisdiction in the District. The alleged "transaction" at issue in this case – a contract for a one-time 30-minute paid programming, or infomercial, spot on Oxygen's cable TV network – was not initiated by Oxygen, but by the unilateral act of the *pro se* plaintiff in this action, Gregory Charles Royal of AYS. AYS, a non-profit with addresses in the District and Virginia, attempted to purchase the paid programming spot, not from Oxygen, but from a third-party media buyer, Back Channel Media, based in Massachusetts. However, the paid program never aired and Back Channel Media refunded to AYS the $6,500 paid for the spot. That plaintiff, in hopes of pitching a non-paid TV show to Oxygen, made unsolicited calls to Oxygen in New York and even briefly visited Oxygen's offices in New York without an appointment does not constitute business transacted by Oxygen in the District sufficient to confer jurisdiction.

Nor is there general jurisdiction over Oxygen in the District of Columbia because Oxygen does not engage in continuous and systematic business in Washington, D.C. And, indeed, the exercise of personal jurisdiction over Oxygen would violate basic due process

1

standards. There are no notable Washington, D.C. interests at stake in this action except that the District is a convenient forum for the plaintiff. Oxygen has essentially no contacts with the District – no offices or other property, no employees, no parent, no subsidiary, no agent for service or process, no business operations – and, thus, the exercise of jurisdiction over Oxygen in the District would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Accordingly, the action should be dismissed with prejudice for lack of personal jurisdiction.

## STATEMENT OF FACTS

Oxygen Media, LLC is a corporation organized and existing under the laws of the state of Delaware. *See* Declaration of Fabian F. Milburn, Jr., Esq. ¶ 2 ("Milburn Decl.").[1] Since Oxygen was incorporated in 1998, its principal place of business has been located in New York, New York. *Id.* Oxygen's main business operations involve broadcasting the Oxygen 24-hour cable network, which broadcasts programs of interest to women and is available in the U.S. and the Caribbean. *Id.* ¶ 3. Oxygen's broadcasts are not directed specifically into the District of Columbia. *Id.*

Oxygen maintains no office, mailing address, telephone, or registered agent for service of process in the District of Columbia. *See id.* ¶ 4. Oxygen maintains no bank accounts or any other accounts in the District of Columbia. *Id.* Oxygen maintains no business records in the District of Columbia. *Id.* ¶ 5. It does not own, lease, use or otherwise have any interest in any real property of any kind in the District of Columbia. *Id.* ¶ 6. The company has no parent, subsidiary, affiliate or employees in the District of Columbia, and is not registered or qualified to do business in the District of Columbia. *Id.* ¶ 7. Oxygen's directors and employees do not

---

[1] No entity currently exists by the name "Oxygen Media, Inc.," the defendant identified in the Complaint. Milburn Decl. ¶ 2.

regularly travel to the District of Columbia. *Id.* ¶ 8. Oxygen does not pay taxes in the District of

Columbia. *Id.* ¶ 9. Oxygen has not been a party to any litigation, other than the instant case –

filed by AYS, not Oxygen – in the District of Columbia. *Id.* ¶ 10. Oxygen has not retained

counsel in the District of Columbia, except in connection with the defense of this *pro se* action,

and has never retained any other professional in the District of Columbia. *Id.*

Oxygen maintains a website – with a server located in New York – for the purpose of

providing information and alerts regarding its cable television network and programming. *Id.* ¶

12. The website also contains promotions, information for advertisers, and offers limited items,

such as DVDs, for sale to individuals who access the site. *Id.* Nothing on the site is specifically

or purposefully directed at residents of the District of Columbia. *Id.* Oxygen has no current

business with advertising agencies in D.C. for its cable network or its website. *Id.* ¶ 11.

Oxygen's specific contacts with the District as they relate to this case are equally limited.

*Id.* ¶¶ 13-18. This action arises out of *pro se* plaintiff's unilateral attempt to buy from an out-of-

state third party a one-time 30-minute paid programming (*i.e.*, infomercial) spot on the Oxygen

network for $6,500 and his unilateral and unsuccessful efforts to persuade Oxygen to air as

regular unpaid programming an *American Idol*-type music TV series. In attempting to secure the

one-time paid programming spot on Oxygen, AYS communicated initially not with Oxygen but

with Back Channel Media, a third party media buying company based in Boston, Massachusetts,

by submitting an order on Back Channel Media's website. *Id.* ¶ 13. Plaintiff does not plead, nor

is there any evidence, that AYS's order was placed from the District of Columbia. Back Channel

Media is not an affiliate or subsidiary of Oxygen, nor is it a party to this action. *Id.* Any

payment by AYS for the $6,500 paid programming spot was made to Back Channel Media, not

Oxygen. *Id.* ¶ 13. Indeed, Back Channel Media returned to AYS, at AYS's request, the $6,500

3

paid for the paid programming spot and the spot never aired on Oxygen. *Id.* Oxygen never received any payment from AYS or Back Channel Media for the paid program at issue in this suit. *Id.*

In addition, no Oxygen employee traveled to the District of Columbia for any meeting concerning any AYS program. *Id.* ¶ 14; Affidavit of Keith Minarik ("Minarik Aff.") ¶ 6. But for one telephone call to AYS to obtain its address, any alleged telephone communication between AYS and Oxygen in New York concerning either the paid programming, the *American Idol*-type TV show or Oxygen's advertising rates was unsolicited by Oxygen, initiated by AYS, not Oxygen, and comprised no more than a few minutes in total. *See* Affidavit of Erica Diaz ("Diaz Aff.") at ¶¶ 2-3; Milburn Decl. ¶ 15; Minarik Aff. ¶ 3; Affidavit of Bridget Collins ("Collins Aff.") ¶¶ 2-6; Affidavit of Elizabeth Howie ("Howie Aff.") ¶¶ 2, 4; Compl. ¶¶ 8 and 12. Plaintiff does not plead and defendant had no knowledge whether Mr. Royal's unsolicited calls to Oxygen in New York were made in the District of Columbia. Diaz Aff. ¶ 2; Howie Aff. ¶ 2; Minarik Aff. ¶ 6. On a few occasions, Oxygen employees, based in Oxygen's office in New York, returned telephone messages that had been left for them in New York by Gregory Charles Royal. *See* Diaz Aff. ¶ 3; Milburn Decl. ¶ 15; Collins Aff. ¶ 2; Howie Aff. ¶¶ 2, 4.

Oxygen employees spoke directly with Mr. Royal and AYS by telephone on only a few occasions. For example, to the best of his recollection, Keith Minarik spoke with Mr. Royal once when Mr. Royal called Mr. Minarik in New York to ask if he had received a paid programming tape Mr. Royal had mailed to Mr. Minarik in New York. Minarik Aff. ¶¶ 3, 5. Mr. Minarik asked Mr. Royal if any copyrighted material in the tape had been cleared and Mr. Royal gave assurance it would be. *Id.* Mr. Minarik never reviewed or "approved" any final paid program for airing, *id.*; Compl. ¶ 6.

4

Learning that Mr. Royal was making unsolicited calls to Oxygen claiming, incorrectly, that he had booked time on Oxygen's network, Mr. Minarik informed Back Channel Media. *Id.* ¶ 5. Back Channel Media informed Mr. Minarik that they would call Mr. Royal to see if he planned to buy paid programming time on Oxygen, but the time was never booked and Back Channel Media later informed Mr. Minarik that it was waiting for payment from Mr. Royal. *Id.*

A second Oxygen employee, Bridget Collins, then Oxygen's Account Executive for Paid Programming, responded by telephone and e-mail over the course of two days to a few inquiries *from Mr. Royal* about Oxygen's rates for Direct Response (short 30 and 60 second advertising spots). Collins Aff. ¶¶ 2-4, 6.

In addition, Elizabeth Howie, an Oxygen Sales Planner, recalls speaking with Mr. Royal by telephone only once for about three minutes in April 2007 when *Mr. Royal called her* in New York about advertising rates for Oxygen's website. Howie Aff. ¶ 2.

Ms. Diaz also recalls speaking with Mr. Royal once in a brief two-minute call *made by Mr. Royal* to Ms. Diaz in New York. Diaz Aff. ¶ 2. But upon receiving Mr. Royal's call, Ms. Diaz informed Mr. Royal that Oxygen was not interested in music programming. *Id.* The Complaint does not plead and Ms. Diaz does not know whether Mr. Royal was in the District of Columbia when he initiated that telephone call to Oxygen in New York. *Id.*

In May or June 2007, Mr. Royal appeared at Oxygen's offices in New York, New York, to Ms. Diaz's knowledge, uninvited and without an appointment. *Id.* ¶ 4. Unclear who he was or what he wanted, Ms. Diaz met him at Oxygen's reception area. *Id.* Mr. Royal gave Ms. Diaz a DVD and indicated that he wanted to air the contents of the DVD on Oxygen's network. *Id.* Ms. Diaz informed Mr. Royal that Oxygen was not interested in music programs. *Id.* Mr. Royal told Ms. Diaz that he was already airing on Oxygen's network. *Id.* Ms. Diaz reiterated that

Oxygen was not interested. *Id.* The encounter at Oxygen's offices in New York lasted no more than five minutes. *Id.* At no time did Ms. Diaz ever have any in-person contact with Mr. Royal or AYS in the District of Columbia. *Id.*

On or about May 14, 2007, Oxygen received a letter from a New York lawyer alerting Oxygen that AYS's paid program, which AYS was falsely promoting as an upcoming Oxygen series called "American Hot Musician," may contain video, audio and/or images owned by a third party artist and not licensed or cleared for use. Milburn Decl. ¶ 17. Accompanying this letter was a copy of a cease and desist letter to AYS threatening legal action if the materials were used in the AYS program. *Id.*

On June 1, 2007, upon learning that AYS was using on its website Oxygen's logos and marks to promote, falsely, *America's Hot Musician* as airing on Oxygen's network -- Oxygen's Senior Vice President of Business Operations in New York, Fabian F. Milburn, Jr., Esq., sent from New York a cease and desist letter to America's Hot Musician c/o AYS. *Id.* ¶ 18. The letter was sent via Federal Express simultaneously to an AYS address in the District of Columbia and an AYS address in Falls Church, Virginia. *Id.* Mr. Milburn requested that AYS cease its unauthorized use of Oxygen's marks on AYS's website. *Id.* Plaintiff responded by e-mail on June 11, 2007. Diaz Aff. ¶ 5. That e-mail did not indicate from what state it was sent. *Id.* Later, Mr. Milburn sent a single-line follow-up e-mail to AYS in response, thanking AYS for complying with Oxygen's request. *Id.* The Complaint does not allege and Oxygen does not know whether the e-mail was received by AYS in D.C., Virginia or elsewhere. However, AYS responded to Mr. Milburn by e-mail on June 14, 2007 and requested that payment for the paid program be refunded to AYS, not to any D.C. address, but to an address in Falls Church, Virginia. *Id.*

On June 12, 2007, AYS filed this suit against Oxygen in the D.C. Superior Court, Civil Action No. 07-0003999, asserting claims for (1) breach of contract/promise; (2) deceptive and unfair business practices; (3) negligence; and (4) tortious conduct generally. *See* Compl. AYS seeks general, punitive, compensatory, special and future damages in the amount of $100 million. *See* Compl.

Plaintiff purported to serve Oxygen by mailing a copy of the Summons and Complaint to Oxygen's corporate offices in New York by certified or registered mail. Oxygen removed the case to this Court under 28 U.S.C. §§ 13-1441, 1448 and 1332 on July 18, 2007.[2] The parties entered into a consent motion, which the Court granted, providing Oxygen until August 3, 2007 to answer or otherwise respond to the Complaint. Oxygen now moves under Federal R. Civ. P. 12(b)(2) to dismiss this action for lack of personal jurisdiction over Oxygen in the District of Columbia.

## ARGUMENT

### I.    PERSONAL JURISDICTION STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of proof" that a defendant is subject to the court's jurisdiction. *United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 60 (D.D.C. 2004) (citing *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002)); *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet this burden, "[a] plaintiff must establish a factual basis for the court's exercise of personal jurisdiction ... [by] alleg[ing] specific facts connecting the defendant with the forum." *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 32-33 (D.D.C. 2007); *Second Amendment Found. v. United States Conf. of Mayors*, 274 F.3d 521, 524 (D.C.

---

[2] Subject matter jurisdiction is based on diversity of citizenship because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 13-1332(a).

Cir. 2001) (plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws"); *see also Helmer v. Doletskaya*, 290 F. Supp. 2d 61, 66 (D.D.C. 2003), *rev'd on other grounds*, 393 F.3d 201 (D.C. Cir. 2004); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 428 (D.C. Cir. 1991). Bare allegations and conclusory statements are insufficient. *Smithfield Foods*, 332 F. Supp. 2d at 60; *Second Amendment Found.*, 274 F.3d at 524.

When a defendant timely objects to a court's personal jurisdiction, the "general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). When evaluating a motion to dismiss under Rule 12(b)(2), a court need not treat all of plaintiff's allegations as true, *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000), and is generally permitted to look outside the pleadings to determine if a plaintiff has established a *prima facie* showing of personal jurisdiction. *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 223 n.1 (D.D.C. 2005); *Smithfield Foods*, 332 F. Supp. 2d at 59-60. In Rule 12(b)(2) motions, unlike Rule 12(b)(6) motions, "courts are free to consider relevant materials outside the pleadings." *Smithfield Foods*, 332 F. Supp. 2d at 59-60 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). *Philip Morris*, 116 F.3d at 120 n.4 (the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts").

## II.    THERE IS NEITHER SPECIFIC NOR GENERAL JURISDICTION OVER OXYGEN

Determining whether a court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis. First, the requirements of the long arm statute must be satisfied, and second, the exercise of jurisdiction must comport with due process. D.C. courts have consistently held that D.C.'s long arm statute is co-extensive with the due process clause of the

8

federal constitution. *Mwani v. bin Laden*, 417 F.3d 1, 9 (D.C. Cir. 2005). Therefore, if the exercise of jurisdiction would violate due process, the D.C. long arm statute does not authorize the exercise of jurisdiction over a defendant.

AYS fails to allege any supportable basis that would warrant personal jurisdiction over Oxygen under D.C.'s long arm statute – under either D.C. Code § 13-423(a)(1) (the specific jurisdiction "transacting business" prong), D.C. Code § 13-423(a)(3)-(4) (the specific jurisdiction "tortious injury" prongs) or § 13-334(a) (the general jurisdiction "doing business" prong).[3] Moreover, because there exist virtually no contacts between Oxygen and the District of Columbia, this Court's exercise of such jurisdiction would violate the Due Process Clause of the U.S. Constitution.

AYS's Complaint alleges only that jurisdiction was proper in the Superior Court for the District of Columbia pursuant to D.C. Code § 11-921, which provides for that court's general jurisdiction. AYS does not specifically allege that personal jurisdiction is proper in the District of Columbia, or set forth specific facts – other than plaintiff's own activities (which may or may not have occurred in the District) – showing that jurisdiction over Oxygen in D.C. is warranted.

---

[3]    The D.C. Court of Appeals has explained:

> Personal jurisdiction over foreign corporations is authorized by statute in the District of Columbia in two ways. Under the District's long arm statute, a foreign corporation, acting directly or through an agent, is subject to personal jurisdiction in the District if, among other things, it has "transact[ed] any business" here. D.C. Code § 13-423(a)(1) (2001). When jurisdiction is based on this section, the claim for relief must "arise[] from" the acts conferring jurisdiction over the defendant. D.C. Code § 13-423(b). This is sometimes referred to as specific jurisdiction. In the alternative, D.C. Code § 13-334(a) may confer general jurisdiction over corporations "doing business" in the District of Columbia.

*Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006) (footnote omitted).

III.    THE "TRANSACTING BUSINESS" PRONG OF THE DISTRICT OF
COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR SPECIFIC
JURISDICTION OVER OXYGEN

Plaintiff has not set forth facts showing that its claim *actually arises from* business

transactions conducted in the District of Columbia, and therefore this Court does not have

specific personal jurisdiction pursuant to § 13-423(a)(1).  The D.C. long arm statute provides

personal jurisdiction over non-residents "transacting any business in the District of Columbia."

D.C. Code § 13-423(a)(1).  It is limited, however, by § 423(b), which states that "only a claim

for relief arising from the acts enumerated in this section may be asserted against him."  Thus

"section 423(b) . . . bar[s] . . . claims unrelated to the acts forming the basis for personal

jurisdiction." *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981); *Brunson*, 404 F. Supp. 2d at

228; *see also COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995)

(stating that part of what a plaintiff needs to show is that "the claim arose from the business

transacted in the District (so-called specific jurisdiction)").  Therefore, AYS must prove – but

cannot – "first, that the defendant transacted business in the District of Columbia; second, that

the claim arose from the business transacted in D.C.; and third, that the defendant had minimum

contacts with the District of Columbia such that the Court's exercise of personal jurisdiction

would not offend 'traditional notions of fair play and substantial justice.' " *Dooley v. United*

*Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe*, 326 U.S. at 316).

A.    Plaintiff's Claim Does Not Arise From Business Transacted by Oxygen in the
District of Columbia Sufficient to Satisfy the Requirements of § 13-423(a)(1)
for Specific Jurisdiction

Plaintiff's claim does not arise from Oxygen's business transactions conducted in the

District of Columbia.  "While, of course, every 'transaction of business' will require some sort of

'purposeful' conduct, not every purposeful act will necessarily amount to transacting business."

*Acker v. Royal Merchant Bank & Finance Co.*, No. 98-00392, 1999 WL 1273476, at *3 (D.D.C. Feb. 10, 1999), *aff'd*, 203 F.3d 51 (D.C. Cir. 1999). The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). "Jurisdiction is proper [only] where the contacts [between the defendant and the forum] proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (emphasis in the original) (citations and quotation marks omitted). *Accord Sol Salins, Inc. v. Sure Way Refrigerated Truck Transp. Brokers, Inc.*, 510 A.2d 1032, 1035 (D.C. 1986) (rejecting the idea that personal jurisdiction under § 13-423(a)(1) may be based on "the unilateral activity of another party or a third person").

Here, the claim arises from plaintiff's unilateral acts alone. The "transaction" at issue was initiated not by Oxygen, but by the act of AYS, when, from an undetermined jurisdiction, AYS, on the website of a third-party, Back Channel Media, based in Massachusetts, placed an order to purchase paid programming time on Oxygen's network. Milburn Decl. ¶ 13. Oxygen was not a party to that transaction, never received payment for the paid program and, indeed, never aired the paid program.[4] *Id.* A plaintiff may not depend on its own activity to establish the existence of defendant's minimum contacts with the forum. *Gibbons & Co. v. Roskamp Inst.*, No. 06-720, 2006 U.S. Dist. LEXIS 60762, at *6 (D.D.C. Aug. 28, 2006) (citing *Hanson v.*

---

[4] Oxygen was within its rights not to air the paid program because, *inter alia*, on May 14, 2007, Oxygen received notification and a copy of a cease and desist letter from a lawyer in New York on behalf of a third party alleging that AYS's show "American Hot Musician" may contain video, audio or images not licensed or cleared for use. *See* Milburn Decl. ¶ 17. Oxygen also learned soon thereafter that AYS was using Oxygen's marks and logo without Oxygen's consent and falsely promoting another program – an *American Idol*-type reality TV series called *America's Hot Musician* – as appearing on Oxygen's network. *Id.* ¶ 18. After receipt of Oxygen's cease and desist letter, AYS indicated by e-mail that it wanted its $6,500 payment refunded. *Id.*

*Denckla*, 357 U.S. 235, 253 (1958)) ("a plaintiff's unilateral activities . . . do not satisfy the requirement that the defendant itself have some minimum contact with the District"). Even if the Back Channel Media's website was accessed from the District of Columbia, AYS's unilateral actions to secure paid programming on the Oxygen network through the website of a third party in Massachusetts certainly does not constitute purposeful availment of the District of Columbia by Oxygen – particularly where Oxygen was not a direct party to the transaction.

Moreover, AYS's allegations that Oxygen engaged in "several communications" with AYS (Compl. ¶ 8), including a phone call on June 5, 2007 (Compl. ¶ 12), concerning AYS's paid programming on Oxygen's network does not support jurisdiction. Such incidental phone conversations are insufficient to establish personal jurisdiction over Oxygen because they do not constitute "transacting business." In *Burger King*, 471 U.S. at 476, the Supreme court observed that because a substantial amount of modern business is transacted solely by mail and wire communications across state lines, there is less need to be physically present in the state where the business is being conducted. However, the *Burger King* court did not rest its finding of personal jurisdiction solely on mail and wire communications between the parties. Rather, the court considered the totality of the circumstances, including the fact that the nonresident defendant's business grew directly out of a contract which had a substantial connection with the resident plaintiff's state, the nonresident defendant specifically reached out to the plaintiff to purchase the franchise, and the nonresident defendant entered into a 20-year contractual relationship with the plaintiff.

While this Court has recognized cases where telephone calls may constitute "transacting business" for purposes of establishing personal jurisdiction under the District's long arm statute, such telephone calls are considered in conjunction with other contacts – contacts absent here. In

*Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992), for example, the plaintiff alleged that the defendants were engaged in a conspiracy to sell armed helicopters to Saudi Arabia. *Id.* at 69-70. Certain defendants allegedly owned and maintained business and residential property in the District, made numerous trips to the District in furtherance of the alleged conspiracy, and sought aid from a District corporation to facilitate laundering bribes passed to the Saudis. In addition, the plaintiff alleged that the defendants "made *countless* phone calls and mailings into the District" directly related to the alleged conspiracy. *Id.* at 72 (emphasis added). The court found that the "telephone calls and mailings to Washington, D.C. constitute 'transacting business' under section 13-423(a)(1)." But, unlike this case, *Dooley* involved "a plethora of other contacts with the District, aside from the phone calls and mailings... ."

In *Brunson*, 404 F. Supp. 2d at 233, a case more akin to this one, the court found that where defendant did not own property in the District, never went to the District to further the transaction, and never contacted or used a third-party District corporation in connection with the transaction, mere phone calls and mailings, which, as here, were "far from 'countless,' " were insufficient to establish personal jurisdiction. Similarly, in *Gibbons*, the court held that a defendant Florida corporation had no minimum contacts within the District, despite a contract with a D.C. corporation and a course of dealing that included the exchange of between 50 and 75 e-mails and more than 75 telephone calls, as well as travel to and meetings in the District. *Gibbons*, 2006 U.S. Dist. LEXIS 60762, at *10. The court noted that – like here – Gibbons relied primarily on his own activities in the District, which were insufficient to establish the out-of-state defendant's minimum contacts, and that the e-mails and telephone communications were "incidental to the contract." *Id.* "The mere fact that [the out-of-state defendant] allegedly

retained [the D.C. plaintiff's] professional services, which set into motion [the D.C. plaintiff's] activities within the District, does not without more constitute an invocation [by the out-of-state plaintiff] of the benefits and protections of the District's laws." *Id. See also FC Inv. Group LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007) (holding that defendant's "regular" telephone calls to the District did not satisfy the "transacting business" requirement of the D.C. long arm statute); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075-77 (10th Cir. 1995) (holding that periodic telephone calls and faxes between Nevada and Oregon residents and Utah company in the course of contract negotiations were insufficient to establish minimum contacts with Utah).

In this case, Oxygen had even less contact with the District than the defendants in *Gibbons*, *Brunson*, *FC*, and *Far West*. The alleged contract here involved a one-time payment of $6,500 by AYS to Back Channel Media based in Massachusetts. The paid program was to air one time only for a total of 30 minutes. There was to be no long-term relationship between AYS and Oxygen and no American Idol-type series. While AYS alleges that some communications took place in part by telephone and email, these communications amounted to the following: (1) a few brief telephone calls and e-mails *initiated by Mr. Royal* from an undetermined location into New York to ask about Oxygen's advertising rates and to ask if Oxygen had received the infomercial tape AYS mailed to Oxygen; (2) a surprise visit by Mr. Royal to Oxygen's offices *in New York*, which lasted fewer than five minutes and in which Erica Diaz told him that Oxygen had no interest in music programs, Diaz Aff. ¶ 2; and (3) a cease and desist letter sent by Oxygen to AYS in D.C. (and Virginia), a few short related e-mails between New York and D.C. and one call to locate AYS's address. *See* Milburn Decl. ¶ 18; Diaz Aff. ¶ 5; Collins Aff. ¶ 5. No Oxygen employees were involved in any negotiations in the District of Columbia or were present

in the District at any time relevant to this litigation.  Diaz Aff. ¶ 4; Milburn Decl. ¶ 18; Minarik

Aff. ¶ 6; Collins Aff. ¶ 6; Howie Aff. ¶ 4.  Most of these Oxygen employees were unaware that

AYS or Mr. Royal had an address in D.C.  Minarik Aff. ¶ 6; Diaz Aff. ¶¶ 2, 5; Howie Aff. ¶ 2.

Accordingly, Oxygen's minimal contacts with the District do not constitute a deliberate and

voluntary association with the forum that rises to the level of transacting business within the

District as would be necessary to invoke the jurisdiction of this Court.

**B.      Oxygen's Cease and Desist Letter to Defendant Does Not Constitute
          Purposeful Transacted Business Within the District of Columbia**

Oxygen's cease and desist letter -- sent from New York to AYS in Virginia and the

District of Columbia -- does not constitute "qualitatively significant" conduct in the District

sufficient to confer jurisdiction and, indeed, is not the act from which this action arises.  *United*

*States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995).  While the Supreme Court has indicated --

in dicta -- that a single act can support jurisdiction, that act must be one in which the defendant

"creates a 'substantial connection' with the forum."  *Burger King*, 471 U.S. at 475 n.18 (citing

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  With no "mechanical test" to apply,

*Burger King*, 471 U.S. at 478 (quoting *International Shoe*, 326 U.S. at 319), this Court has held

that it "must consider the 'quality and nature' of [a defendant's] contacts with this jurisdiction,

*Burger King*, 471 U.S. at 480, and whether exercising personal jurisdiction offends the

'traditional notions of fair play and substantial justice.'"  *Manifold v. Wolf Coach, Inc.*, 231 F.

Supp. 2d 58, 62 (D.D.C. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316).

In *Manifold*, this Court found that where a defendant's business transaction to sell a news

van to a television station in the District involved negotiations between television station

representatives in the District and defendant's representatives in Massachusetts -- including a

meeting in the District between the defendant's national sales representative and the television

station – and the end result of the contract was a new van to be used specifically for news

gathering in the District, defendant's contacts were "qualitatively significant." *Manifold*, 231 F.

Supp. 2d at 62. The Court weighed the value of the transaction, $200,417 – far more than the

$6,500 at issue in this case – when determining the significance of defendant's conduct. *Id.*

By contrast, in this case, Oxygen did not engage in any, let alone significant, negotiations

with AYS leading to the issuance of the cease and desist letter. Further, Oxygen never met with

the plaintiff in the District. Diaz Aff. ¶ 4; Millburn Decl. ¶ 18; Minarik Aff. ¶ 6; Collins Aff. ¶ 6;

Howie Aff. ¶ 4. And, most importantly, the cease and desist letter arose from AYS's

unauthorized use of Oxygen's marks, not any agreement, or lack thereof, to air the paid program

or any other TV show. Milburn Decl. ¶ 18. Therefore, Oxygen's cease and desist letter alone is

not sufficiently significant to confer jurisdiction. Moreover, as discussed *infra*, finding personal

jurisdiction based on Oxygen's cease and desist letter would offend the "traditional notions of

fair play and substantial justice," *International Shoe*, 326 U.S. at 316, because this single act was

not "qualitatively significant" enough to constitute purposeful availment of the District.

## IV.    THE "TORTIOUS INJURY" PRONG OF THE DISTRICT OF COLUMBIA'S LONG ARM STATUTE PROVIDES NO BASIS FOR SPECIFIC JURISDICTION OVER OXYGEN

The "tortious injury" prongs of D.C.'s long arm statute, D.C. Code §§ 13-423(a)(3)-(4),

are inapplicable here. The Complaint, while alleging two counts of negligence and tortious

conduct generally, does not cite to these provisions as the basis for jurisdiction. More

importantly, however, there is no underlying tort at issue here. Nothing alleged on the face of

the Complaint establishes that Oxygen caused tortious injury in the District either by an act or

omission in the District or by an act or omission outside the District. *See* D.C. Code §§ 13-

423(a)(3)-(4). Indeed, AYS has failed to allege any tortious act or omission on the part of

Oxygen anywhere, let alone in D.C. If anything, this dispute arises out of an alleged contract for

a paid programming spot. Plaintiff's telephone calls, if even made from D.C. to Oxygen in New York, in futile attempts to pitch a TV show to Oxygen, are insufficient acts on the part of Oxygen to confer jurisdiction in the District.

Even if AYS could allege tortious conduct by Oxygen in D.C. under subsections (a)(3)-(4), which it cannot, these subsections do not apply as there is no allegation of any tortious injury actually suffered by AYS in the District. Vague and uncorroborated statements and conclusory allegations that AYS "*can reasonably expect* to lose its standing in the community" and that "the integrity of its program *can reasonably be expected to suffer* in the public's and business community perception," Compl. ¶ 19, does not suffice. *See Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations.").

What is more, AYS has not alleged any duty on the part of Oxygen or any breach of duty that could cause damage to AYS – the necessary elements of plaintiff's negligence and tort claims. *See, e.g., Henderson v. Milobsky*, 595 F.2d 654 (D.C. Cir. 1978); *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998). In any event, recourse for a contract dispute lies in a legal suit under the contract and not an action in tort. *See Blake Const. Co. v. C. J. Coakley Co.*, 431 A.2d 569 (D.C. 1981). Accordingly, Counts Three and Four of the Complaint – failing as they do to allege specific tortious acts or even any elements of negligence or "tortious conduct generally" – cannot form the basis for personal jurisdiction over Oxygen.

## V.    THERE IS NO BASIS FOR THIS COURT TO EXERCISE GENERAL JURISDICTION OVER OXYGEN

### A.    Oxygen is Not Subject to this Court's General Jurisdiction under § 13-334(a) of D.C.'s Long Arm Statute Because Oxygen Does Not Have "Systematic and Continuous" Business Contacts in this Forum

Subsection § 13-334(a), which authorizes general jurisdiction over the defendant, is

similarly inapplicable. "On its face, D.C. Code § 13-334(a) appears to relate only to service of process on a foreign corporation. This court, however, has long used § 13-334(a) as a means of 'conferr[ing] jurisdiction upon trial courts here over foreign corporations doing <u>substantial</u> business in the District of Columbia . . . ." *Gonzales,* 891 A.2d at 233 (D.C. 2006) (quoting *Guevara v. Reed*, 598 A.2d 1157, 1159 (D.C. 1991) (emphasis added)). Section 13-334(a) provides:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal places of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C. Code § 13-334(a).

General jurisdiction § 13-334(a) requires that a "non-resident defendant has engaged in 'continuous and systematic general business contacts' in the forum," *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 50 (D.D.C. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)), *appeal dismissed*, No. 03-7166, 2003 WL 22971974 (D.C. Cir. Dec. 11, 2003), and that "such systematic contacts demonstrate a 'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.' " *Id.* (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981))); *see, e.g., Gonzalez*, 891 A.2d at 233 ("the defendant corporation must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here").

The requirement that a defendant's contacts with the forum be "continuous and systematic" means, among other things, that defendants with merely "sporadic" contacts – such

as Oxygen – are *not* subject to the general jurisdiction of the forum. *E.g., El-Fadl,* 75 F.3d at 675; *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 59 (D.D.C. 2006); *Atlantigas*, 290 F. Supp. 2d at 53.

Moreover, it is not simply the *quantity* of contacts that matter, but also the *quality* of those contacts which are analyzed by the reviewing court. The Supreme Court's decision in *Helicopteros*, explicates the quality of contacts necessary for general jurisdiction. *Helicopteros* was a wrongful death action brought in a Texas state court against a Colombian corporation and others for an accident that took place in Peru when one of the defendant's helicopters crashed. Four Texas contacts were identified: (1) the defendant's chief executive officer flew, at the request of the consortium, to Houston to negotiate the transportation contract; (2) the defendant purchased most of its helicopters over a period of years from the Bell Helicopter Company in Fort Worth, Texas; (3) it sent prospective pilots and management personnel for training to Bell in Texas; and (4) the checks paying for its transportation services were drawn on a Texas bank and paid into a New York account. *Helicopteros,* 466 U.S. at 416.

The *Helicopteros* Court concluded that the defendant's contacts with Texas did not constitute continuous and systematic activity, and that it was inconsistent with the Due Process Clause for the Texas court to assert general jurisdiction. 466 U.S. at 418-19. "[T]he Court's rejection of each of Helicopteros' contacts with the forum state as not significant, as well as its failure to consider the effect of the aggregate of those contacts, suggests very strongly that the threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5 (2007).

Here, Oxygen's contacts with D.C. are limited and unrelated to this litigation. By no

19

means do they amount to continuous or systemic contacts with the forum. Oxygen is a Delaware corporation doing business in New York. Milburn Decl. ¶ 2. The only contact that Oxygen had with the District is that it broadcasts cable television programs available to subscribers throughout the U.S., advertises throughout the U.S., and maintains a website that can be accessed from any jurisdiction. *Id.* ¶¶ 3, 12. None of these contacts form the basis or bear any relation to plaintiff's claims. Oxygen maintains no office, mailing address, telephone, or registered agent for service of process in the District of Columbia. *Id.* ¶ 4. Oxygen maintains no bank accounts or any other accounts in the District of Columbia and maintains no business records in the District of Columbia. *Id.* ¶ 5. The Company does not own, lease, use, or otherwise have any interest in any real or personal property of any kind in the District of Columbia. *Id.* ¶ 6. Oxygen has no employees, parents, subsidiaries or affiliates in the District of Columbia, and is not registered or qualified to do business in the District of Columbia. Id. ¶ 7. Oxygen does not and has not paid taxes in the District of Columbia. *Id.* ¶ 9. Oxygen has not been party to any litigation, other than the instant case, in the District of Columbia. *Id.* ¶ 10. The Company has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia. *Id.* Accordingly, the high threshold for "continuous and systematic contacts" has not been even remotely satisfied here.

**B.     Defendant's Broadcast of its Cable Network into the District of Columbia Does Not Create General Jurisdiction**

Although Oxygen's cable network is broadcast nationwide, including to certain subscribers in the District of Columbia, such broadcasting does not constitute sufficient contacts for personal jurisdiction, particularly where this action does not arise from any program that was ever even broadcast by Oxygen period, let alone broadcast into the District of Columbia.

Milburn Decl. ¶ 13. "Where a plaintiff's cause of action does not arise from television broadcasts into a state, the broadcasts do not constitute sufficient contacts for personal jurisdiction." *Zimmerman v. United States Football League*, 637 F. Supp. 46, 48 (D. Minn. 1986) (citing *Manton v. California Sports, Inc.*, 493 F. Supp. 496, 498 (N.D. Ga. 1980), *Munchak Corp. v. Riko Enterprises, Inc.*, 368 F. Supp. 1366, 1374 (M.D.N.C. 1973)); *cf. Tonka Corp. v. TMS Entertainment, Inc.*, 638 F. Supp. 386, 389-90 (D. Minn. 1985) (holding that, where plaintiff's cause of action *was based on television broadcast* in state, such broadcast may constitute sufficient jurisdictional contacts) (emphasis added).

A company's television broadcast into a state may only be considered as one factor among other contacts to establish personal jurisdiction. For example, in *Viacom International, Inc. v. Three Star Telecast, Inc.*, 639 F. Supp. 1277 (D.P.R. 1986), a defendant broadcasting corporation located in St. Croix, U.S. Virgin Islands – defending a claim that it had defaulted on payment for licensing agreements entered into with plaintiff – asserted that it had no minimum contacts with Puerto Rico and, therefore, jurisdiction there was improper. The district court observed that although the defendant was not authorized to do business in Puerto Rico, its signal was received there. *Id.* at 1280. In addition, defendant earned ten percent of its revenue from its advertising contracts with Puerto Rican advertisers. *Id.* Indeed, one of defendant's two sole stockholders personally solicited advertising in Puerto Rico, along with another agent. *Id.* What is more, defendant's corporate president lived and worked in Puerto Rico, and his office there had been used for conducting defendant's corporate business. *Id.* In light of the combination of contacts, the district court found that defendant "ha[d] been carrying on a 'continuous and systematic but limited part of its general business' within Puerto Rico," and denied defendant's motion to dismiss. *Id.*

21

Unlike the defendant in *Viacom,* Oxygen has no offices or employees resident in the

District of Columbia. Milburn Decl. ¶¶ 4, 7. Oxygen has no current business with advertising

agencies resident in the District, *id.* ¶ 11, and does not specifically solicit ads from residents of

the District of Columbia. Most importantly, unlike *Tonka*, Oxygen's broadcasts into the District

of Columbia are entirely unrelated to the allegations in plaintiff's Complaint, which arise from

an alleged contract for a 30-minute paid programming spot that never aired and Mr. Royal's

misguided hopes that that the paid programming spot might lead to his very own *American Idol*-

type TV show on Oxygen. Accordingly, this Court lacks general personal jurisdiction over

Oxygen.

       **C.**      **The Presence of Oxygen's Website Does Not Constitute "Substantial Business" Within the District of Columbia**

The mere fact that Oxygen maintains a website accessible from the District of Columbia

is not sufficient to confer jurisdiction because Oxygen does not use its website to do business

with District of Columbia residents in any directed or continuous and systematic way. Milburn

Decl. ¶ 12. Oxygen maintains a website for the limited purpose of providing information

regarding its cable network. *Id.* Oxygen does not engage in more than limited commercial sales

via its website and various alerts, promotional offers and information for advertisers. *Id.* This

action does not arise from or bear any relationship to Oxygen's website.

It is well-established that a passive website does not constitute purposeful availment of a

jurisdiction. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347-50 (D.C. Cir.

2000); *Peluzzo v. Leiboff*, No. 00-7604, 2004 D.C. Super. LEXIS 22 (D.C. Super. Dec. 13,

2004), ("[a] passive Web site that does little more than make information available to those who

are interested in it is not grounds for the exercise of personal jurisdiction"). *Id.* at *11-12

(internet citation omitted). But "[e]ven if interactive, the website must be used by a defendant to

do business with residents in the forum state in a *continuous* and *systematic way*" – contacts

absent here. *Id.* "Mere access by forum residents to a non-resident defendant's website is not

enough, by itself to establish minimum contact with the forum." *Atlantigas,* 290 F. Supp. at 51-

52 (emphasis added). "With interactive websites, 'the exercise of jurisdiction is determined by

examining the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site.'" *Peluzzo,* 2004 D.C. Super LEXIS at \*12 (citing *Zippo Mfg. Co. v.*

*Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

    Oxygen's website does not constitute "continuous and systematic" contacts with the

District because Oxygen does not engage in continuous transactions via its website with District

of Columbia residents. In *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir.

2002), the D.C. Circuit considered whether defendant Ameritrade's contacts were sufficiently

"continuous and systematic" to establish general personal jurisdiction over the company. In

particular, the court contemplated the extent to which Ameritrade's online brokerage services

website constituted transacting business in the District. Specifically, the court noted that

Ameritrade website users could open accounts online, transmit funds, use accounts to buy and

sell securities, borrow from Ameritrade, and pay Ameritrade commissions and interest. *Id.*

Further, the court found that Ameritrade itself used the site to transmit electronic confirmations,

account statements, and financial and product information to customers. *Id.* In addition, the

court noted that through the electronic activity on the Ameritrade website, Ameritrade and its

District of Columbia customers "enter into binding contracts, the customers become the owners

of valuable securities, and Ameritrade obtains valuable revenue." *Id.* at 512-13. The court

emphasized that "the fact that Ameritrade also offers its customers the alternative of

accomplishing virtually all of the above-described transactions by ordinary mail or telephone,"

demonstrated "that nothing about the Ameritrade website need alter [the court's] traditional

approach to personal jurisdiction." *Id.* at 513. Accordingly, the court found that through its

website, "Ameritrade is doing business in the District of Columbia by continuously and

systematically 'entering into contracts with residents of a foreign jurisdiction that involve the

knowing and repeated transmission of computer files over the Internet.' " *Id.* at 513 (quoting

*Zippo,* 952 F. Supp. at 1124).

By contrast, the Oxygen website is far more passive. While it links to other sites that

may be more interactive, it does not permit users to open accounts, become owners of valuable

assets, borrow from Oxygen, or pay Oxygen commissions or interest. Nor does the Oxygen

website transmit account statements to website users. To the contrary, other than providing

general information about its programming, Oxygen offers promotions and limited items for sale

to website users but it does not direct its website specifically to D.C. residents or engage in any

continuous course of conduct with D.C. residents via its website. Milburn Decl. ¶ 12. Oxygen's

website is distinguishable from the highly interactive and commercial Ameritrade website

considered in *Gorman*, and does not create general personal jurisdiction over Oxygen in the

District.

## VI.    THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD VIOLATE DUE PROCESS

Under the due process requirement of *International Shoe,* the exercise of jurisdiction may

not offend "traditional notions of fair play and substantial justice." On this point:

> [T]he determination of the reasonableness of the exercise of jurisdiction in each
> case will depend on an evaluation of several factors. A court must consider the
> burden on the defendant, the interests of the forum State, and the plaintiff's
> interest in obtaining relief. It must also weigh in its determination "the interstate
> judicial system's interest in obtaining the most efficient resolution of
> controversies; and the shared interest of the several States in furthering
> fundamental substantive social policies."

*Asahi Metal Indus. Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 113

(1987) (plurality opinion) (citations omitted). There must be a constitutionally sufficient relationship between the defendant and the forum, and a basis for the defendant's amenability to service of summons. *See Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 112 (D.D.C. 2006); *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005). These requirements stem from the Due Process Clause of the Constitution and are a restriction on judicial power as a matter of individual liberty. *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).

The due process analysis consists of three parts; the defendant must (1) "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253; and (2) "reasonably anticipate being haled into court" in the forum state, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); finally, (3) the "suit cannot offend traditional notions of fair play and substantial justice," *International Shoe Co.,* 326 U.S. at 316. In addition, the minimum contacts "must come about by an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (emphasis in original). Therefore, it is vital that due process considerations be reviewed on a case-by-case basis before personal jurisdictions can be found to exist over a defendant. *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs., Inc.*, 355 A.2d 808, 811 (D.C. 1976) ("the jurisdictional issue must be resolved on a case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as providing the supposed basis for jurisdiction"); *Doe I v. Israel*, 400 F. Supp. 2d 86, 109 (D.D.C. 2005) ("the D.C. long arm statute only goes as far as the Due Process Clause will permit.")

## A.    Oxygen Did Not Purposefully Avail Itself of the District of Columbia

In order to satisfy the foreseeability component of the due process analysis, the Supreme Court held that "it is essential in each case that there be some act by which the defendant

25

purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. Applying this test,

the Court has found that a number of situations satisfy the "purposeful availment" requirement so

as to allow a court to exercise specific personal jurisdiction over a foreign defendant. In *McGee*,

355 U.S. at 223, the Supreme Court held that specific personal jurisdiction is proper in a case

where "the suit was based on a contract which had substantial connection with [the forum]."

Additionally, the Court held that a court may exercise specific personal jurisdiction over a

foreign defendant where the defendant has engaged in "continuing relationships and obligations"

with citizens of the forum. *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339

U.S. 643, 647 (1950).

In the present case, however, as discussed above, the single "transaction" was unilaterally

initiated by AYS by attempting to purchase air time on Oxygen via a third-party, Back Channel

Media. Because AYS cannot establish a substantial and continuing relationship between Oxygen

and the District of Columbia and has failed to demonstrate how jurisdiction in this forum would

otherwise be fundamentally fair, this Court's exercise of jurisdiction over Oxygen would offend

the requirements of the Due Process Clause.

### B.     Fair Play and Substantial Justice

Beyond showing that the terms of the long arm statute are satisfied, which plaintiff has

failed to do, plaintiff also has failed to show that the exercise of personal jurisdiction in this case

does not exceed the permissible bounds of the Due Process Clause. Under this standard, "the

defendant's conduct and connection with the forum state [must be] such that he should

reasonably anticipate being haled into court there." *Ning Ye v. Hong Bao Zhang*, No. 05-00832,

2006 WL 1102832, at *3-4 (D.D.C. Mar. 31, 2006) (citing *World-Wide Volkswagen*, 444 U.S. at

297).

The burden on Oxygen to defend this action in the District of Columbia would be great. Oxygen is a company based in New York that has no real and continuing connection with the District. Oxygen has not been party to any litigation, other than the instant case, in the District of Columbia. Milburn Decl. ¶ 10. Oxygen has not retained counsel in the District of Columbia, except in connection with this action against it, and has never retained any other professional in the District of Columbia. *Id.*

The interests of the forum – the District – in this matter are slight. The action is brought here for one reason only. AYS and Mr. Royal are based either in the District or in Virginia, and thus the District is a very convenient forum *for the plaintiff.* This consideration does not weigh in the determination of whether this action constitutes fair play with regard *to the defendant.* There is no inherent reason why District of Columbia law should be applied in this case, and certainly none why Oxygen should be haled into court in D.C.

By the same token, there is no reason to believe that interstate interests would be served by adjudicating the case against Oxygen in the District of Columbia. The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen,* 444 U.S. at 297. Oxygen had no reason to foresee that it would be sued on such a tenuous basis in the District of Columbia.

## CONCLUSION

For the foregoing reasons, Oxygen respectfully requests that this Court enter an Order granting Defendant Oxygen Media, LLC's Motion and dismiss this case with prejudice for lack of personal jurisdiction.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton /s/
Constance M. Pendleton (DC Bar No. 456919)
    conniependleton@dwt.com
Lisa B. Zycherman (DC Bar No. 495277)
    lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, DC  20006-3402
Telephone:     (202) 973-4200
Facsimile:     (202) 973-4499

*Attorneys for Defendant Oxygen Media, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 10th day of August, 2007, a copy of the foregoing Motion to Dismiss and Corrected Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and supporting affidavits and declaration and proposed order were served electronically and by first-class mail, postage pre-paid, upon:

Mr. Gregory Charles Royal
American Youth Symphony
262 16th Street, SE, Suite 3
Washington, D.C.  20003


      Constance M. Pendleton /s/
      Constance M. Pendleton

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN YOUTH SYMPHONY | ) | |
| Plaintiff, | ) | |
| v. | ) | **No. 1:07-cv-01280 (JDB)** |
| OXYGEN MEDIA, INC. | ) | |
| Defendant. | ) | |

**CORRECTED DECLARATION OF FABIAN MILBURN**

I, Fabian F. Milburn, Jr., Esq., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am the Senior Vice President of Business Operations at Oxygen Media, LLC ("Oxygen"). I work in Oxygen's New York offices at 75 Ninth Avenue, New York, NY 10011. I make this declaration in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2.     Oxygen is a corporation organized and existing under the laws of the state of Delaware. No entity currently exists by the name of Oxygen Media, Inc. Since 1998, Oxygen's principal offices have been located in New York, New York.

3.     Oxygen's primary business operations involve broadcasting the Oxygen cable television network, which is available in the U.S. and the Caribbean. Oxygen's broadcasts are not directed specifically into the District of Columbia.

4.     Oxygen maintains no office, mailing address, telephone, or registered agent for service of process in the District of Columbia.

5.     Oxygen maintains no bank accounts or any other accounts in the District of Columbia, and maintains no business records in the District of Columbia.

6.     Oxygen does not own, lease, use or otherwise have any interest in any real property of any kind in the District of Columbia.

7.     Oxygen has no parent, subsidiary, affiliate or employees in the District of Columbia, and is not registered or qualified to do business in the District of Columbia.

8.     Oxygen's directors and employees do not regularly travel to the District.

9.     Oxygen does not pay taxes in the District of Columbia.

10.    Oxygen has never been a party to any litigation, other than the instant case initiated by American Youth Symphony ("AYS"), in the District of Columbia. Oxygen has not retained counsel in the District of Columbia, except in connection with this action brought by AYS, and has never retained any other professional in the District of Columbia.

11.    Oxygen has no current business with advertising agencies located in the District of Columbia.

12.    Oxygen owns and operates a website, www.oxygen.com, for the purpose of providing information regarding its cable network. The website also offers promotions, information for advertisers, alerts and limited items for sale, such as DVDs, to individuals who access the site. The website's server is located in New York, New York. The website is not specifically directed to residents of Washington, D.C.

13.    In attempting to place the paid programming at issue in this suit, AYS communicated initially and primarily with Back Channel Media, a third party media buying company based in Boston that buys and sells paid programming space on Oxygen's network. Back Channel Media is not an affiliate or subsidiary of Oxygen or a party to this action. Any payment by AYS would have been made to Back Channel Media, not Oxygen, and I understand Back Channel Media returned to AYS the $6,500 allegedly paid for the paid program. Oxygen

2

never received any payment from AYS or Back Channel Media for the paid program and the paid program never aired on Oxygen's network.

14.     No Oxygen employee traveled to the District of Columbia for any meeting concerning any AYS program.

15.     The alleged telephone communications between AYS and Oxygen concerning the paid programming at issue in this suit were initiated by AYS, not Oxygen, and none comprised more than a few minutes in total.  Upon information and belief, the telephone contacts alleged in the Complaint, Compl. ¶¶ 8 and 12, amounted only to a handful of communications in which Gregory Charles Royal made calls to Oxygen in New York or Oxygen employees in New York returned telephone messages left by Mr. Royal.

16.     Similarly, upon information and belief, email communications between Oxygen in New York and AYS concerning the paid programming at issue in this suit amounted to only a handful of email exchanges initiated by Mr. Royal and taking place over the course of a short time period in 2007.

17.     Around May 14, 2007, Oxygen received a letter from a New York lawyer for a third party artist notifying Oxygen that AYS's paid program, which AYS was falsely promoting as an upcoming Oxygen show called "America's Hot Musician," may contain video, audio and/or images owned by that artist that were not licensed or cleared for use.  Accompanying the May 14, 2007 letter was a copy of a cease and desist letter sent to AYS that same day by the artist's lawyer threatening to take legal action in the event of further use of the artist's material in the AYS program.

18.     Upon learning that AYS was using on its website Oxygen's logos and marks to promote an *American Idol* type program AYS falsely claimed would air on Oxygen's network,

on June 1, 2007, I sent from New York via Federal Express a cease and desist letter to America's Hot Musician c/o AYS at an address in the District of Columbia and an address in Falls Church, Virginia, requesting that AYS cease its unauthorized use of Oxygen's marks on AYS's website. In response to an e-mail from AYS, I sent a single-line follow-up e-mail thanking AYS for complying with Oxygen's request.  AYS e-mailed me on June 14, 2007 about refunding payment for the paid program to AYS at an address in Falls Church, Virginia.  That was the extent of my contact with Mr. Royal and AYS.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 9, 2007, at New York, New York.

Fabian F. Milburn, Jr., Esq.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **No. 1:07-cv-01280 (JDB)** |
| **OXYGEN MEDIA, INC.** | ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF ERICA DIAZ

I, Erica Diaz, solemnly affirm under penalty of perjury, that the information herein is true to the best of my knowledge, information and belief:

1.     I am Business Coordinator at Oxygen Media, LLC ("Oxygen"), defendant in this action. I work in Oxygen's New York office at 75 Ninth Avenue, New York, NY 10011. I make this affidavit in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2.     To the best of my recollection, I have spoken directly with Gregory Charles Royal by telephone only once, in the Spring of 2007. That communication was initiated by Mr. Royal to my office in New York and took no more than one or two minutes, during which time Mr. Royal said he wanted to broadcast a program on Oxygen's network and I informed him that Oxygen was not interested in music programming. I do not know whether Mr. Royal was in the District of Columbia when he placed that telephone call.

3.     Prior to that call, Mr. Royal called Oxygen in New York and left me telephone messages on four or fewer occasions. Not knowing the nature of his business, I returned his telephone calls once or twice from New York, leaving a message with my name and telephone number. I never initiated any contacts with Mr. Royal or American Youth Symphony ("AYS").

4.    In May or June 2007, Mr. Royal appeared at Oxygen's offices in New York, New York, to my knowledge, uninvited and without an appointment. Unclear who he was or what he wanted, I met him at Oxygen's reception area for less than five minutes. He handed me a DVD and indicated that he wanted to air the contents of the DVD on Oxygen's network. I informed him that Oxygen was not interested in music programs. He told me that he was already airing on Oxygen's network. I reiterated that Oxygen was not interested. At no time did I ever have any in person contact with Mr. Royal or AYS in the District of Columbia.

5.    On June 11, 2007, I received an e-mail from Mr. Royal, also sent to Fabian Milburn, Senior Vice President of Business Operations at Oxygen, in response to Oxygen's cease and desist letter, stating that Mr. Royal had removed Oxygen's logos and trade name from AYS's website. The e-mail did not indicate from what state the e-mail was sent or in what state AYS or Mr. Royal were located.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on August 2, 2007, at New York, New York.

_____
Erica Díaz

Subscribed and sworn to before me this 2nd day of August, 2007

_____
Notary Public

My Commission expires on: MAY 24, 2008

BENRUS DELUNA MADLANGBAYAN
Notary Public - State of New York
No. 01MA6110402
Qualified in New York County
Commission Expires 05/24/2008

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 1:07-cv-01280 (JDB)** |
| | ) | |
| **OXYGEN MEDIA, INC.** | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF BRIDGET COLLINS

I, Bridget Collins, solemnly affirm under penalty of perjury, that the information herein is true to the best of my knowledge, information and belief:

1.    I am currently an Account Executive for Paid Programming at Oxygen Media, LLC ("Oxygen"), defendant in this action.  In April 2007, I was a Sales Planner for Direct Response and Paid Programming at Oxygen.  I work in Oxygen's New York office at 75 Ninth Avenue, New York, NY 10011.  I submit this affidavit in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2.    In April of 2007, I responded to a few general requests from Gregory Charles Royal about Oxygen Network's general advertising rates.  These communications were initiated by Mr. Royal by e-mail and telephone to my office in New York and I responded by e-mail and telephone from New York.

3.    Specifically, around April 9, 2007, Mr. Royal called me for information about Oxygen's Direct Response rates – that's short 30 and 60 second advertising spots on Oxygen's cable television network.  I e-mailed him Oxygen's Direct Response rate card, which lists the terms and rates for Direct Response advertising on Oxygen's network.

4.    Soon after that, Mr. Royal asked for information about Oxygen's advertising rates on Oxygen's website.  I sent him an e-mail with the name of the Oxygen employee responsible for online advertising.  Mr. Royal followed up with me by e-mail on April 11, 2007 to thank me for the rate information and to clarify his questions about Oxygen's Direct Response advertising rates.  I sent him a short follow-up e-mail explaining that rates for Paid Programming (longer infomercials) are different from rates for short Direct Response ad spots.

5.    Around May 30, 2007, I was asked to locate the mailing address of American Youth Symphony ("AYS") I believe for a letter concerning AYS's unauthorized use of Oxygen's logos.  I called a telephone number for AYS and asked for AYS's address.

6.    That was the extent of my contact with Mr. Royal and AYS.  I did not initiate any contacts with Mr. Royal or AYS.  I never met Mr. Royal or anyone from AYS in person anywhere, including in the District of Columbia.

I affirm under penalty of perjury that the foregoing is true and correct.  Executed on August __ , 2007, at New York, New York.

_____
Bridget Collins

Subscribed and sworn to before me this 2⁴ day of August, 2007

_____
Notary Public

My Commission expires on:  MAY 24, 2008

BENRUS DELUNA MADLANGBAYAN
Notary Public - State of New York
No. 01MA6110402
Qualified in New York County
Commission Expires 05/24/2008

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **No. 1:07-cv-01280 (JDB)** |
| | ) |
| **OXYGEN MEDIA, INC.** | ) |
| Defendant. | ) |

## AFFIDAVIT OF ELIZABETH HOWIE

I, Elizabeth Howie, solemnly affirm under penalty of perjury, that the information herein is true to the best of my knowledge, information and belief:

1.    I am a Sales Planner at Oxygen Media, LLC ("Oxygen"), defendant in this action. I work in Oxygen's New York office at 75 Ninth Avenue, New York, NY 10011. I make this affidavit in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2.    To the best of my recollection, I have spoken directly with Gregory Charles Royal by telephone only once, in April of 2007. As I recall, that communication was initiated by Mr. Royal when he called Oxygen's offices about advertising on Oxygen's website. I returned the message, leaving Mr. Royal a voice message. Mr. Royal called me back. He asked what the price would be to run different forms of ads on Oxygen's website. I gave him a rough estimate. That telephone conversation lasted about three minutes. I do not know whether Mr. Royal was in Washington, D.C. when he made the telephone call.

3.    Following that telephone call, Mr. Royal e-mailed me on April 12, 2007 about his request for online ad rates. I responded by e-mail on April 13, 2007 to let him know we were working on his request and, in a follow-up e-mail, I provided Mr. Royal Oxygen's gross rates for online ads. He e-mailed me on April 19, 2007 to ask the basis for Oxygen's online advertising

1

prices, to which I responded by e-mail. On April 20, 2007, he e-mailed me to say he was

working on an ad to be ready in May, but, as far as I know, he never submitted any online ad to

Oxygen. I never heard anything from him again after that e-mail.

4.    I never initiated any contacts with Mr. Royal or American Youth Symphony

("AYS"), other than to respond to his general requests for online advertising rate information. I

never met with Mr. Royal or anyone else from AYS in person in Washington, D.C. or elsewhere.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on

August 0, 2007, at New York, New York.

_____
Elizabeth Howie

Subscribed and sworn to before me this 8 day of August, 2007

_____
Notary Public

My Commission expires on: MAY 24 2008

BENRUS DELUNA MADLANGBAYAN
Notary Public - State of New York
No. 01MA6110402
Qualified in New York County
Commission Expires 05/24/2008

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 1:07-cv-01280 (JDB)** |
| | ) | |
| **OXYGEN MEDIA, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AFFIDAVIT OF KEITH MINARIK

I, Keith Minarik, solemnly affirm under penalty of perjury, that the information herein is true to the best of my knowledge, information and belief:

1. In 2007, I was Account Executive for Paid Programming Sales at Oxygen Media, LLC ("Oxygen"), defendant in this action. I worked in Oxygen's New York office at 75 Ninth Avenue, New York, NY 10011. I have since left Oxygen and am now employed by Viacom in New York. I make this affidavit in support of Oxygen's Motion to Dismiss for lack of personal jurisdiction.

2. I understand that in 2007 Mr. Royal contacted Back Channel Media, a Boston-based media buying company, about buying a one-time 30-minute paid programming spot on Oxygen's television network. A paid programming advertising spot is a long advertisement and is also known as an "infomercial."

3. Mr. Royal then sent to my attention in New York a DVD or VHS tape of the paid program. Around that time, Mr. Royal also telephoned me at Oxygen's offices in New York and asked if I had received the tape. I asked him whether any copyrighted material on the tape had been cleared and told him I would approve it if he cleared the copyrights. He said he would take care of it. I never saw or "approved" any final paid programming tape for airing. *See* Compl. ¶

6. I did not see any Oxygen logos or signage on the tape. I did not review plaintiff's website or ever discuss it with him. *See* Comp. ¶ 8.

5.    To the best of my recollection, I spoke directly with Gregory Charles Royal by telephone only that one time. But I understand Mr. Royal made unsolicited calls to Oxygen, claiming he had booked time on Oxygen. I informed Back Channel Media that Mr. Royal was claiming he had booked time with Oxygen when he hadn't. Back Channel Media said they would call Mr. Royal to ask if he planned to buy paid programming time on Oxygen's network. I never heard back and later learned from Back Channel Media that they were waiting for payment from Mr. Royal.

6.    At no time did I ever have any face-to-face contact with Mr. Royal or anyone else from American Youth Symphony ("AYS") in the District of Columbia or elsewhere. At this time, I do not recall having any e-mail exchanges with Mr. Royal. If I ever called him, it only would have been as a courtesy to return a telephone message left by him on my voicemail in New York, but I don't have any specific recollection of doing so. I never initiated this contact with Mr. Royal or AYS. I do not recall knowing in what state Mr. Royal or AYS were located.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on August 9, 2007, at New York, New York.

_____
Keith Minarik

Subscribed and sworn to before me this 9th day of August, 2007

SHEILA LUSTIG
Notary Public, State of New York
No. 41-4819601
Qualified in Kings County
Certificate filed in New York County
Commission expires January 31, 20 11

My Commission expires on: 1/31/11

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN YOUTH SYMPHONY** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **No. 1:07-cv-01280 (JDB)** |
| ) | |
| **OXYGEN MEDIA, INC.** ) | |
| ) | |
| Defendant. ) | |

### [PROPOSED] ORDER

Upon Consideration of defendant Oxygen Media's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Points and Authorities and declaration and affidavits in support thereof, it is hereby

**ORDERED** that defendant's motion to dismiss be, and hereby is **GRANTED**; it is further

**ORDERED** that this action is hereby **DISMISSED** in its entirety with prejudice for lack of personal jurisdiction.

**SO ORDERED.**

Dated this ___ day of _____, 2007

_____
Hon. John D. Bates
United States District Judge

Copies to:

Constance M. Pendleton, Esq.
Lisa B. Zycherman, Esq.
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W.
Suite 200
Washington, D.C. 20006-3402

*Counsel for Defendant Oxygen Media, LLC*

Gregory Charles Royal DBA
American Youth Symphony
262 16th Street, SE
Suite 3
Washington, D.C. 20003

*Pro Se for Plaintiff American Youth Symphony*