## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN YOUTH SYMPHONY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 1:07-cv-01280 (JDB)** |
| | ) | |
| **OXYGEN MEDIA, LLC** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT OXYGEN MEDIA'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP

Constance M. Pendleton (D.C. Bar No. 456919)
conniependleton@dwt.com
Lisa B. Zycherman (D.C. Bar No. 495277)
lisazycherman@dwt.com
1919 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C.  20006-3402
Telephone:  (202) 973-4200
Facsimile:  (202) 973-4499

*Attorneys for Defendant Oxygen Media, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT. ............................................................................................................................... 4

I.      AYS HAS NOT SET FORTH FACTS SHOWING THAT THE DISTRICT
        OF COLUMBIA'S LONG ARM STATUTE PROVIDES ANY BASIS FOR
        SPECIFIC JURISDICTION OVER OXYGEN ................................................................ 4

        A.      Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant
                to the "Transacting Business" Prong of the District of Columbia's
                Long Arm Statute .................................................................................................. 4

        B.      Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant
                to the "Contracting to Supply Services" Prong of the District of
                Columbia's Long Arm Statute ............................................................................... 8

        C.      Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant
                to the "Tortious Injury" Prongs of the District of Columbia's Long
                Arm Statute ........................................................................................................... 9

II.     AYS HAS ESTABLISHED NO BASIS FOR THIS COURT TO EXERCISE
        GENERAL JURISDICTION OVER OXYGEN .............................................................. 10

III.    THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD
        VIOLATE DUE PROCESS ............................................................................................ 13

IV.     AYS'S CLAIMS THAT OXYGEN SUBMITTED FALSE AFFIDAVITS TO
        THE COURT ARE UNFOUNDED ................................................................................. 14

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003) ........................ 12

*Bayles v. K-Mart Corp.,* 636 F. Supp. 852 (D.D.C. 1986)................................................ 5

*Berwyn Fuel, Inc. v. Hogan,* 399 A.2d 79 (D.C. 1979) ................................................... 5

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ................................................... 5

*Cohane v. Arpeja-California, Inc.,* 385 A.2d 153 (D.C. 1978)................................... 5, 8

*COMSAT Corp. v. Finshipyards S.A.M.,* 900 F. Supp. 515 (D.D.C. 1995) ................. 7, 9

*Dooley v. United Technologies Corp.,* 786 F. Supp. 65 (D.D.C. 1992) ......................... 5

*Environmental Research International, Inc. v. Lockwood Greene*
    *Engineers, Inc.,* 355 A.2d 808 (D.C. 1976) ........................................ 6

*EEOC v. District of Columbia Public Schools,* 217 F.R.D. 12 (D.D.C. 2003)............................ 16

*FC Investment Group LC v. IFX Markets, Ltd.,* 479 F. Supp. 2d 30 (D.D.C. 2007) ...................... 7

*Flanagan v. Wyndham International Inc.,* 231 F.R.D. 98 (D.D.C. 2005) .................................... 16

*Gibbons & Co. v. Roskamp Institute,* No. 06-720, 2006 WL 2506646
    (D.D.C. Aug. 28, 2006)......................................................................... 6, 7

*Hanson v. Denckla*, 357 U.S. 235 (1958)................................................................. 6

*Jung v. Association of American Medical Colleges,* 300 F. Supp. 2d 119 (D.D.C. 2004) ............. 7

*Kulko v. Superior Court,* 436 U.S. 84 (1978) .............................................................. 6

*Manton v. California Sports, Inc.,* 493 F. Supp. 496 (N.D. Ga. 1980) .......................... 12

*McGee v. International Life Insurance Co.,* 355 U.S. 220 (1957).................................... 8

*Mouzavires v. Baxter,* 434 A.2d 988 (D.C. 1981)......................................................... 8

*Munchak Corp. v. Riko Enterprises, Inc.,* 368 F. Supp. 1366 (M.D.N.C. 1973) ........................ 12

*Novak-Canzeri v. Saud,* 864 F. Supp. 203 (D.D.C. 1994) ........................................... 14

*Orgeron v. Opryland, U.S.A.,* No. 92-2657, 1993 WL 192200 (E.D. La. June 3, 1993)............. 11

*Peluzza v. Leiboff,* No. 00-7604, 2004 D.C. Super LEXIS 22 (D.C. Super. Dec. 13, 2004) ........ 12

*Quill Corp. v. North Dakota,* 504 U.S. 298 (1992) ...................................................................... 13

*Rahal v. Paris Sec. Corp.,* 1982 U.S. Dist. LEXIS 17867 (D.D.C. Oct. 27, 1982) ...................... 7

*Richter v. Analex Corp.,* 940 F. Supp. 353 (D.D.C. 1996) ............................................................ 7

*Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006) .......................................................... 5

*Textile Museum v. F. Eberstadt & Co.,* 440 F. Supp. 30 (D.D.C. 1977) .................................... 7, 9

*Travelers Health Association v. Virginia ex rel. State Corp. Commission,*
       339 U.S. 643 (1950) ........................................................................................................... 13-14

*Tonka Corp. v. TMS Entertainment, Inc.,* 638 F. Supp. 386 (D. Minn. 1985) ............................ 12

*United States v. Ferrara,* 54 F.3d 825 (D.C. Cir. 1995) ............................................................... 8

*United States v. Philip Morris Inc.,* 116 F. Supp. 2d 116 (D.D.C. 2000) .................................... 14

*Willis v. Willis,* 655 F.2d 1333 (D.C. Cir. 1981) .......................................................................... 5

*Zimmerman v. United States Football League,* 637 F. Supp. 46 (D. Minn. 1986) ...................... 12

## STATUTES AND RULES

D.C. Code § 13-334(a) .................................................................................................................. 10

D.C. Code § 13-423 .............................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 2

Fed. R. Civ. P. 26(b)(2) ............................................................................................................... 16

Defendant Oxygen Media, LLC ("Oxygen"), by undersigned counsel, pursuant to Local Rule 7(d), respectfully submits this Reply Memorandum of Points and Authorities in Support of Oxygen's motion to dismiss, with prejudice, the Complaint filed by American Youth Symphony ("AYS").

### PRELIMINARY STATEMENT

**Background.**  This case is one "full of sound and fury; signifying nothing."  It arises from an alleged contract for a one-time 30 minute infomercial spot (the "Infomercial") that AYS attempted to secure on Oxygen's cable TV network through a third-party media buyer, Back Channel Media ("Back Channel").  Contrary to AYS's allegations, Oxygen and AYS had no direct contract and Oxygen never "approved" or agreed to accept AYS's Infomercial for airing on Oxygen's network.  But even if Oxygen had, all advertising and infomercials that air on Oxygen's network are subject to Oxygen's approval.  Any infomercial may be refused for any reason or no reason at all.  Remarkably, while AYS claims to be damaged by the fact that its Infomercial did not air on Oxygen's network, it was AYS, not Oxygen, that requested that the money AYS paid to Back Channel for the Infomercial be refunded (though Back Channel Media had never even cashed AYS's check).  And, indeed, it was AYS, not Oxygen, that filed a preliminary injunction in D.C. Superior Court demanding that Oxygen immediately cancel airing of the Infomercial and return to AYS all funds paid.  *See* June 15, 2007 Mot. for Prelim. Injunction.

Even had Oxygen refused to accept AYS's Infomercial for airing on Oxygen's network, Oxygen would have been completely within its rights.  Oxygen received on May 14, 2007 notice of a cease and desist letter from a law firm on behalf of the band, Kittie, threatening "immediate legal action" if the Infomercial aired.  *See* Declaration of Fabian Milburn in Support of Motion to Dismiss ("Milburn Decl.") ¶ 17.  The cease and desist letter, addressed to AYS, asserted that

AYS's Infomercial contained unlawful copyrighted material and imagery and likenesses owned by Kittie that had not been licensed or cleared for use. *Id.* The footage allegedly was taken from the band's video and used in the Infomercial's opening theme.

After receipt of the cease and desist letter, Oxygen also learned that AYS was falsely and publicly claiming that the Infomercial was an American-Idol type series that was scheduled to air on the Oxygen network as part of Oxygen's regular TV programming. *Id.* at ¶ 18. Given that Oxygen was on notice of the Infomercial's allegedly unlawful content, as well as AYS's mischaracterizations of its Infomercial as a regular Oxygen TV series and AYS's unauthorized use of Oxygen's marks, Oxygen would have been entirely justified in declining to air the Infomercial rather than expose its network to liability for, *inter alia*, copyright infringement and commercial misappropriation by third parties.

Oxygen sent its own cease and desist letter to AYS on June 1, 2007 to demand that AYS cease from using Oxygen's logos and marks in promoting "America's Hottest Musician" as an Oxygen program. Shortly thereafter, AYS filed suit against Oxygen in the Superior Court of the District of Columbia. The claims: (1) breach of contract/promise; (2) deceptive and unfair business practices; (3) negligence; and (4) tortious conduct generally. *See* Compl. AYS asks for no less than $100 million in general, punitive, compensatory, special and future damages. *See* Compl. Following removal to this Court, Oxygen moved to dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

**Specific Jurisdiction.** This Court does not have specific jurisdiction over Oxygen because this case does not "arise from" any actions by Oxygen within the District. Even if it did, the actions alleged were unilateral actions of plaintiff Gregory Royal and AYS, completely unsolicited by Oxygen. In any event, the actions at issue here amount to no more than a handful

of telephone calls and emails Mr. Royal made to Oxygen in New York and Back Channel Media in Massachusetts in a futile attempt to buy infomercial time on Oxygen's network, and to leverage that time into a regular TV series on Oxygen's network.  Such unilateral actions do not amount to "transacting business" in the District.  (Point I.A.).  Nor does this lawsuit arise from a contract to supply services in the District, as plaintiff incorrectly suggests.  The claim has nothing to do with any cable franchise agreements, even if Oxygen were a party to those agreements, which it is not.  (Point I.B.).  Finally, there is no evidence of any tortious injury to AYS beyond mere speculation that could be caused by Oxygen.  Any injury AYS suffered was the unfortunate result of its own actions.  (Point I.C.).  Thus, this Court lacks specific jurisdiction over Oxygen.

**General Jurisdiction and Due Process.**  This Court does not have general jurisdiction over Oxygen and its exercise would violate due process.  Oxygen's "contacts" in the District do not amount to "purposeful availment" sufficient to satisfy the "doing business" requirements for general jurisdiction, let alone due process.  Oxygen acknowledges that its network is available to viewers in Washington, D.C., as it is nationwide, *see* Milburn Decl. ¶ 3, but Oxygen's network is not specifically directed at viewers in the District and this case does not arise out of any matter broadcast by Oxygen into the District or elsewhere.

Furthermore, neither Oxygen's affiliate agreements nor any revenues Oxygen receives from them establish general "doing business" jurisdiction over Oxygen in D.C.[1]  Any affiliate

---

[1] In an effort to show that Oxygen has business connections with entities within the District of Columbia, AYS filed a Motion for Production of Documents, seeking an order requiring Oxygen to submit or make available to AYS "copies of all 'Affiliate Agreements' aka 'contracts' it maintained during the claim period . . . with each and every cable company, satellite company and internet server that conducted business in the District of Columbia . . . ." Mot. at 1.  AYS withdrew the motion after the parties stipulated that "Oxygen receives payments (*i.e.*, revenues) from Comcast and RCN that are based, in part, on the number of customers who pay subscriber fees in the District of Columbia (and elsewhere in the U.S. and the Caribbean) who receive

agreements Oxygen has are national or regional agreements, not specifically directed at D.C.,

between Oxygen and the national parent companies of cable and satellite service providers based

outside of D.C.  Oxygen does not have any contracts with the D.C. local franchise authority.

Similarly, the fact that Oxygen has general Errors and Omissions ("E&O") insurance with

national coverage – not specifically directed at the District – does not establish general

jurisdiction over Oxygen in D.C.  It also fails to demonstrate that Oxygen "purposefully availed"

itself of the District or had reason to anticipate being haled into court in D.C.  While conceivably

this insurance would cover a claim that arose from a broadcast into the District, the claim at issue

here does not arise from any content that was ever broadcast in the District or elsewhere.  What

is more, the fact that a party has a national insurance policy cannot be sufficient in and of itself to

hale a party into court in any jurisdiction in this land.  Accordingly, there is no basis for this

Court to exercise general jurisdiction over Oxygen and, indeed, that exercise would violate due

process.  (Points II and III).

## ARGUMENT

## I.    AYS HAS NOT SET FORTH FACTS SHOWING THAT THE DISTRICT OF COLUMBIA'S LONG ARM STATUTE PROVIDES ANY BASIS FOR SPECIFIC JURISDICTION OVER OXYGEN

### A.    Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant to the "Transacting Business" Prong of the District of Columbia's Long Arm Statute

AYS's claim does not arise from business transacted by Oxygen in the District of

Columbia sufficient to satisfy the requirements of D.C. Code § 13-423(a)(1) for specific

jurisdiction.  A court can exercise personal jurisdiction under the "transacting any business"

---

Oxygen's signal.  Comcast's payments are sent from Comcast in Philadelphia, Pennsylvania to
Oxygen in New York, New York, and RCN's payments are sent from RCN in Herndon, Virginia
to Oxygen in New York, New York."  *See* Sept. 14, 2007 Stipulation.  Because of the
Stipulation, upon plaintiff's motion, the Court terminated the Motion for Production of
Documents on September 18, 2007.

clause of D.C.'s long-arm statute only if: (1) the defendant transacted business in the District; and (2) the claim arises from business transacted in the District. *Dooley v. United Technologies Corp.*, 786 F. Supp. 65 (D.D.C. 1992). Significantly, D.C.'s long-arm statute requires that plaintiff's claim "arise from" the defendant's contacts with the District of Columbia. *See* D.C. Code § 13-423(b); *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981); *Bayles v. K-Mart Corp.*, 636 F. Supp. 852, 854 (D.D.C. 1986). In other words, Section 13-423(b) bars claims unrelated to the acts forming the basis for personal jurisdiction. *See Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 60 (D.D.C. 2006) (out-of-state defendant may be haled into D.C. court if the "litigation results from alleged injuries that 'arise out of or relate to' those activities") (internal citations omitted); *see also Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979) (per curium); *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 159 (D.C. 1978). The "arising from" requirement is strictly enforced in the District of Columbia because it serves to ensure that a state does not exceed its powers under the due process clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

AYS has failed to show that its claim arises from Oxygen's business transactions conducted in the District of Columbia. The transaction that forms the basis of AYS's claim arises from AYS's unilateral – and ultimately unsuccessful – attempts to purchase infomercial time on Oxygen's cable network, initiated when Mr. Royal attempted to place an order via the website of a Massachusetts third party, Back Channel.[2] Milburn Decl. ¶ 13. Oxygen never received payment from AYS for the Infomercial and, at AYS's request, the Infomercial never even aired. *Id.*

---

[2] AYS incorrectly asserts that Back Channel made an "offer" to AYS "to purchase advertising from Defendant." Opp'n at 18. This is incorrect. As AYS correctly affirms, Opp'n at 6, AYS initiated contact with Back Channel in an attempt to air an infomercial on Oxygen's network.

In this case, AYS's contacts with third party Back Channel are insufficient to establish personal jurisdiction over Oxygen in the District. AYS claims that Back Channel was acting as Oxygen's "broker" when AYS initiated communications with Back Channel about purchasing paid programming on Oxygen's cable network. Opp'n at 6. Back Channel is a third party media buying company based in Massachusetts that buys and sells paid programming space on Oxygen's network, among other media outlets. Fabian Decl. ¶ 13; Minarik Aff. ¶ 2. Back Channel is not an affiliate or subsidiary of Oxygen. Fabian Decl. ¶ 13. Moreover, Oxygen does not retain control over Back Channel sufficient to establish personal jurisdiction over Oxygen through AYS–initiated communications with Back Channel. The kind of foreseeability critical to the proper exercise of specific jurisdiction is *not* the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. Even "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Moreover, the contacts plaintiff describes in its Opposition confirm that AYS relies on nothing but its own unilateral activities to establish the existence of defendant's minimum contacts with the District of Columbia. But the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Kulko v. Superior Court*, 436 U.S. 84, 93 (1978). Moreover, "a plaintiff cannot rely on its own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." *Envt'l Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 812 (D.C. 1976); *see also, e.g., Gibbons & Co. Inc. v. Roskamp Inst.*, No. 06-720, 2006 WL 2506646, *2 (D.D.C. Aug. 28,

2006); *Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996).  Here, AYS confirms that it

made an "initial contact" to Back Channel Media in January 2007.  Opp'n at 6.  Further, the two

emails from plaintiff to Oxygen employees quoted in AYS's Opposition were also initiated by

AYS.  Opp'n at 8.  AYS also confirms that it initiated contact with Oxygen employee Erica Diaz

by phone in June 2007, and that Mr. Royal went to Oxygen's offices in New York that same

month to drop off a tape of the program (a fact irrelevant to the jurisdictional analysis since Mr.

Royal's visit occurred in New York).  Opp'n at 10.

      In addition, to the extent that Oxygen employees returned a handful of AYS's phone calls

and emails, such contacts do not constitute "transacting business" in the District of Columbia

and, indeed, fall far short of the amount of such contact required to establish specific jurisdiction.

"The Court may not assert specific jurisdiction over defendant based on such contacts alone."

*FC Invs. Group LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30 (D.D.C. 2007) (*citing Gibbons &

Co.*, 2006 WL 2506646, at *3 (finding 50 to 75 phone calls and emails from a Florida defendant

to the District of Columbia prior to signing of a contract in Florida insufficient to establish that

defendant "transacted business" in D.C. under D.C. Code § 13-423(a)(1)).[3]

---

[3] *See also Jung v. Ass'n of American Med. Colls.*, 300 F. Supp. 2d 119, 131 (D.D.C. 2004)
(finding non-forum defendants' contacts with the forum – up to ten times per year – insufficient
to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1));
*COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 523 (D.D.C. 1995) (finding
approximately eleven instances of contact – in the form of faxes and phone calls – between non-
forum defendant and forum, several of which were initiated by non-forum defendant, insufficient
to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1));
*Rahal v. Paris Sec. Corp.*, 1982 U.S. Dist. LEXIS 17867, *2, *6 (D.D.C. Oct. 27, 1982) (finding
that "at least" 30 phone calls between non-forum defendant and plaintiff, approximately half of
which were initiated by defendant, and during which defendant allegedly provided fraudulent
information, insufficient to establish that defendant "transacted business" in forum under D.C.
Code § 13-423(a)(1)); *Textile Museum v. F. Eberstadt & Co.*, 440 F. Supp. 30, 31-33 (D.D.C.
1977) (finding 74 instances of mailed correspondence initiated by non-forum defendant and one
personal consultation in the forum with the non-forum service provider insufficient to establish
that defendant "transacted business" in forum under D.C. Code §13-423(a)(1)).

Finally, Oxygen's cease and desist letter to AYS does not constitute purposeful transacted business within the District of Columbia.  Although the threshold for satisfying the "transacting any business" inquiry, where the claim arises out of that transaction, is lower than that for the "doing business" inquiry, *Cohane*, 385 A.2d at 158 and, under certain circumstances, a single act may be sufficient to constitute "transacting business," *Mouzavires v. Baxter*, 434 A.2d 988, 992-93 (D.C. 1981), Oxygen's cease and desist letter sent from New York to AYS in Virginia and the District of Columbia to protect Oxygen's trademarks is <u>not</u> "transacted business."  Nor does the letter constitute "qualitatively significant" conduct in the District sufficient to confer jurisdiction.  *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995).  Most importantly, the cease and desist letter, which arose from AYS's unauthorized use of Oxygen's marks on its website, Milburn Decl. ¶ 18, is not the conduct from which this claim arises.  The cease and desist letter does not establish a "substantial connection" with the District sufficient to establish personal jurisdiction over Oxygen here.  *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

**B.     Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant to the "Contracting To Supply Services" Prong of the District of Columbia's Long Arm Statute**

In its Opposition, AYS claims, for the first time, that this Court may exercise personal jurisdiction over Oxygen pursuant to D.C. Code § 13-423(a)(2), which permits jurisdiction "as to a claim for relief arising from . . . contracting to supply services in the District of Columbia."  Opp'n at 14.  AYS alleges that, because cable companies providing service in the District of Columbia "are required to provide diversity programming" pursuant to their "cable franchise agreements," the broadcast of the Oxygen's network, which provides programming for a female audience, serves this requirement.  Opp'n at 15.  Moreover, AYS claims that Oxygen satisfies the "contracting to supply services" prong by "providing 24 hour woman's [sic] programming to

the District cable systems, fulfilling those systems' obligations to hundreds of thousands of

District consumers." *Id.* Aside from the dispositive fact that AYS's claim does not "arise from"

any cable franchise agreement or other agreement to supply services in D.C., or anything ever

broadcast by Oxygen into the District of Columbia or elsewhere, the "contracting to supply

services" prong "only applies to a non-resident who injects itself into the District by agreeing to

provide some service to the resident in the District." *COMSAT Corp.*, 900 F. Supp. at 524; *see

also Textile Museum,* 440 F. Supp. at 32-33.

　　This prong of the long arm statute does not apply to Oxygen because Oxygen has not

contracted directly with any local D.C. cable or satellite service provider. Oxygen contracts only

with cable service providers' national parent companies (located, *inter alia*, in Pennsylvania and

Virginia) and through national or regional agreements not specifically directed at D.C. Any

agreements with a local D.C. franchise authority are between the District of Columbia and the

local cable service provider, not Oxygen. Nor has Oxygen contracted with AYS to supply any

service. Accordingly, the Court cannot exert personal jurisdiction over Oxygen pursuant to the

"contracting to supply services" prong of the District's long arm statute.

### C.　Personal Jurisdiction Has Not Been Established Over Oxygen Pursuant to the "Tortious Injury" Prongs of the District of Columbia's Long Arm Statute

　　AYS has failed to establish the "tortious" injury prongs of the District's long arm statute,

D.C. Code §§ 13-423(a)(3)-(4). AYS claims that Oxygen's cease and desist letter, which

demanded that AYS discontinue the use of Oxygen's trademarks, inflicted tortious injury on

AYS. Specifically, AYS claims the letter "had the instant effect of canceling Plaintiff's program

because without Oxygen's tradename Plaintiff could not communicate where the program was

airing on television." Opp'n at 16. However, Oxygen was entirely justified in protecting against

unauthorized use of its marks and in questioning AYS's blatant mischaracterization of an

Infomercial as a TV series airing as regular programming on Oxygen's network. In fact, it is Oxygen that would have been damaged had it aired the Infomercial, as Oxygen would have exposed itself to liability for, *inter alia*, copyright and commercial misappropriation claims from third parties.

Moreover, AYS's argument that Oxygen's demand effectively caused cancellation of AYS's program is completely baseless. It was AYS, not Oxygen, who chose to pull the program and requested return of payment. And it was AYS that filed a preliminary injunction demanding that Oxygen not air the Infomercial. *See* Milburn Decl. ¶ 18. Further, AYS's allegation that Oxygen's cease and desist letter inflicted tortious injury on AYS by causing "embarrassment and disappointment," and "financial harm," to AYS and its "stakeholders," Opp'n at 16-17, falls flat.[4] AYS – not Oxygen – has widely broadcast the existence of the cease and desist letter by posting it on AYS's website at http://www.americashotmusician.org/ceasedesist.html for all the world to see. Therefore, none of AYS's vague allegations establishes that Oxygen – as opposed to AYS itself – caused tortious injury in the District by an act or omission inside or outside the District, and AYS has provided no affidavits by its alleged "stakeholders" to support AYS's vague claims.

## II.    AYS HAS ESTABLISHED NO BASIS FOR THIS COURT TO EXERCISE GENERAL JURISDICTION OVER OXYGEN

Oxygen is not subject to this court's general jurisdiction under D.C. Code § 13-334(a) because Oxygen does not have "systematic and continuous" business contacts in this forum. Plaintiff's contentions that Oxygen's "purposeful and necessary contractual actions with District of Columbia cable systems" and the "significant income it receives from the subscriber fees of

---

[4] AYS further alleges that Oxygen received payment for AYS's paid programming on May 29, 2007. Opp'n at 17. This is incorrect. Oxygen never received any payment for the Infomercial from AYS. Milburn Decl. ¶ 13.

District of Columbia consumers," Opp'n at 1, establishes personal jurisdiction over Oxygen in

the District are unavailing. Oxygen's activities are insufficient to confer general jurisdiction

over Oxygen in the District of Columbia.

The Eastern District Court of Louisiana's opinion in *Orgeron v. Opryland, U.S.A.*,

No. 92-2657, 1993 WL 192200 (E.D. La. Jun. 3, 1993), is instructive. In *Orgeron*, plaintiff

husband and wife visited defendant Opryland U.S.A.'s ("Opryland's") theme park in Nashville,

Tennessee, where the wife slipped and fell while getting off a boat at the park run by a Louisiana

corporation. The plaintiffs sued Opryland in Louisiana for damages allegedly resulting from the

wife's fall, and Opryland moved to dismiss for lack of personal jurisdiction. *Id.* The court

considered plaintiff's assertion that cable network affiliate agreements to broadcast The

Nashville Network ("TNN"), a cable television network and unincorporated division of

Opryland, in Louisiana established general jurisdiction over Opryland in Louisiana. *Id.* at *1.

The Court concluded that, although TNN's contracts with local Louisiana cable system operators

demonstrated that Opryland had some contacts with Louisiana by transacting business with cable

system operators in the state, such contacts were not "continuous and systematic" because the

contracts were drafted in Connecticut and entered into only partially in Louisiana. *Id.* at *2-3.

Further, as here, the contracts were performed outside of Louisiana, because subscription

payments went to Connecticut. *Id.* In addition, TNN performed its obligations under the

contracts in Tennessee by transmitting the TNN signal to a satellite. *Id.* The court found that

"Opryland has not demonstrated any intention to avail itself of the protection of the laws of

Louisiana, and could not reasonably expect to be haled into court here." *Id.* at *3.

So too here. Oxygen's affiliate agreements are insufficient to establish general

jurisdiction over Oxygen in the District because the agreements are national or regional

agreements not specifically directed at the District, Stip. ¶ 1, and Oxygen performs its

obligations under the affiliate agreements outside of the District.  Milburn Decl. ¶ 3.  Moreover,

the agreements are with the national parent companies of cable or satellite service providers

located outside the District and not directly with any D.C. entities, *e.g.*, Comcast in Philadelphia,

Pennsylvania and RCN in Herndon, Virginia.  Stip. ¶ 1.  Consequently, Oxygen's agreements to

broadcast its cable network do not constitute contacts in the District of Columbia sufficient to

establish general personal jurisdiction.

Further, as Oxygen stated in its Motion to Dismiss – and AYS recited in its Opposition –

"[w]here a plaintiff's cause of action does not arise from television broadcasts into a state, the

broadcasts do not constitute sufficient contacts for personal jurisdiction."  *Zimmerman v. United*

*States Football League*, 637 F. Supp. 46, 48 (D. Minn. 1986) (*citing Manton v. California*

*Sports, Inc.*, 493 F. Supp. 496, 498 (N.D. Ga. 1980); *Munchak Corp. v. Riko Enters., Inc.*,

368 F. Supp. 1366, 1374 (M.D.N.C. 1973)); *cf. Tonka Corp. v. TMS Entm't, Inc.*, 638 F. Supp.

386, 389-90 (D. Minn. 1985) (holding that, where plaintiff's cause of action *was based on*

*television broadcast* in state, such broadcast may constitute sufficient jurisdictional contacts)

(emphasis added).  Because this action does not arise from anything actually broadcast by

Oxygen anywhere, Oxygen's broadcasts into the District of Columbia do not create general

jurisdiction over Oxygen in the District.[5]

---

[5] AYS also points to Oxygen's website, Opp'n at 3, which may be viewed by District residents.
However, Oxygen's website does not constitute purposeful availment of this forum.  "Even if
interactive, the website must be used by defendants to do business with residents in the forum
state in a continuous and systematic way."  *Peluzza v. Leiboff*, No. 00-7604, 2004 D.C. Super.
LEXIS 22 (D.C. Super. Dec. 13, 2004).  Mere access to a website is insufficient by itself to
establish the necessary minimum contacts."  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d
34, 51-52 (D.D.C. 2003).

### III.    THE EXERCISE OF JURISDICTION OVER OXYGEN WOULD VIOLATE DUE PROCESS

AYS incorrectly contends, quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 308 (1992), that exercising jurisdiction over Oxygen in the District of Columbia would not violate due process because " 'the requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State.' "  Opp'n at 12.  AYS further states, without support, that "jurisdiction of this state would not violate Defendant's right to due process under the 14th Amendment."  Opp'n at 1.  AYS's reliance on *Quill* is misplaced.  That case pertained to an action filed by the North Dakota Tax Commissioner to require an out-of-state mail-order company without a physical presence in the state to collect and pay a use tax on goods purchased for use in the State.  The due process issues addressed by the court in *Quill* related to the lawfulness of the state statute, and not an analysis of whether personal jurisdiction over the defendant was permissible.

AYS further argues that Oxygen "could reasonably anticipate being haled into Court in the District," because Oxygen "carr[ies] errors and omissions insurance" to protect "against the risks associated with the transmission of all programming."  Opp'n at 12-13.  As Oxygen has stipulated, Oxygen maintains broadcasters media liability insurance with coverage extending to certain claims that might arise as a result of broadcasts of Oxygen's programs anywhere in the U.S. and the Caribbean.  Stip. ¶ 2.  But this insurance coverage relates to the content of Oxygen's broadcasts – material not at issue in this case.  In any event, a general, national insurance policy not specifically directed at the District cannot be sufficient to establish that Oxygen "reasonably anticipated being haled into court in the District."

In addition, Oxygen has not engaged in "continuing relationships and obligations" with citizens of the District of Columbia.  *Travelers Health Ass'n v. Virginia ex rel. State Corp.*

*Comm'n*, 339 U.S. 643, 647 (1950).  Pointing to little more than AYS's own unilateral efforts to purchase paid programming on Oxygen's network, as well as Oxygen's national broadcasts, contractual relationships and insurance coverage, AYS has failed to establish a substantial and continuing relationship between Oxygen and the District of Columbia, specifically.

AYS's claim that Oxygen would not be unduly burdened if this Court exerted jurisdiction over Oxygen in the District is no justification for haling Oxygen into a D.C. court on a meritless claim.  Opp'n at 18.  AYS's assertion that this case has "matured" too much to change forums is baseless.  While an initial jurisdictional motion to dismiss has been filed, the case has not matured even to the scheduling of an initial scheduling conference let alone discovery or trial.  The burden on Oxygen to defend this action in the District would be great because Oxygen is based outside the District with no continuing connection with the District.  Oxygen has not been party to any other litigation in the District, Milburn Decl. ¶ 10, and has not (until this case) retained counsel here.  *Id.*

## IV.    AYS'S CLAIMS THAT OXYGEN SUBMITTED FALSE AFFIDAVITS TO THE COURT ARE UNFOUNDED

AYS alleges that the affidavits of Keith Minarik and Erica Diaz that Oxygen submitted with its Motion to Dismiss were "perjurious" [sic] and "blatantly false."  Opp'n at 2, 10.  When considering challenges to personal jurisdiction, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  *See also Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) ("[T]he Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit.")

Oxygen disputes AYS's claim that Keith Minarik, Account Executive for Paid
Programming Sales at Oxygen, "approved" AYS's infomercial "for airing" on the Oxygen
Network.  *See* Opp'n at 6.  As Mr. Minarik stated in his Affidavit:

> Mr. Royal then sent to my attention in New York a DVD or VHS tape of the paid
> program.  Around that time, Mr. Royal also telephoned me at Oxygen's offices in
> New York and asked if I had received the tape.  I asked him whether any
> copyrighted material on the tape had been cleared ***and told him I would approve
> it if he cleared the copyrights.***  He said he would take care of it.  ***I never saw or
> "approved" any final paid programming tape for airing.***  *See* Compl.¶ 6.

Affidavit of Keith Minarik ("Minarik Aff.") in Support of Motion to Dismiss ¶ 4 (emphasis
added).  The contact with Mr. Minarik, initiated by AYS, left unresolved whether AYS's paid
infomercial would air on the Oxygen Network.  Contrary to AYS's claim, Mr. Minarik recalls
speaking directly with Mr. Royal "by telephone only that one time."  Minarik Aff. ¶ 5.

Similarly, AYS's claim that the affidavit of Erica Diaz "is blatantly false" is
unsupportable.  AYS confirms that it initiated contact with Ms. Diaz in the Spring of 2007, and
that Ms. Diaz informed AYS that Oxygen was not interested in AYS's proposed music
programming.  Opp'n at 10; Affidavit of Erica Diaz ("Diaz Aff.") ¶ 2.  However, Ms. Diaz does
not recall agreeing to meet with Mr. Royal at Oxygen's New York offices to view a DVD copy
of AYS's proposed music programming.  Opp'n at 10; Diaz Aff. ¶ 4.  Contrary to AYS's claim,
Ms. Diaz recalls that Mr. Royal "appeared at Oxygen's offices in New York, New York . . .
uninvited and without an appointment."  Diaz Aff. ¶ 4.

Both parties do agree, however, that any contact between Mr. Royal and Mr. Minarik or
Ms. Diaz was initiated by Mr. Royal, and that any in-person communications occurred in New
York – not the District of Columbia.  As discussed, such unilateral contact is insufficient to
establish personal jurisdiction over Oxygen in the District.[6]

---

[6] AYS's request that Oxygen's Motion to Dismiss be held in abeyance pending the court's

**CONCLUSION**

For the foregoing reasons, defendant Oxygen respectfully urges that its Motion to

Dismiss be granted and that the Complaint be dismissed with prejudice for lack of jurisdiction.

Dated this 28th day of September, 2007.

       Respectfully submitted,

       DAVIS WRIGHT TREMAINE LLP

       Constance M. Pendleton /s/
       Constance M. Pendleton (DC Bar No. 456919)
       conniependleton@dwt.com
       Lisa B. Zycherman (DC Bar No. 495277)
       lisazycherman@dwt.com
       1919 Pennsylvania Avenue, N.W., Suite 200
       Washington, DC  20006-3402
       Telephone:  (202) 973-4200; Fax: (202) 973-4499
       conniependleton@dwt.com
       lisazycherman@dwt.com

       Attorneys for Defendant Oxygen Media, LLC

---

decision on whether to permit AYS to engage in jurisdictional discovery is moot and should be denied.  AYS's jurisdictional discovery request is mooted by the Court's September 18, 2007 Order granting the plaintiff's Motion to Withdraw its Motion for Production of Documents and terminating Plaintiff's Motion for Production of Documents.  Any further discovery as to jurisdiction would be unreasonably cumulative or duplicative under Fed. R. Civ. P. 26(b)(2). *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005); *EEOC v. District of Columbia Pub. Schs.*, 217 F.R.D. 12, 14 (D.D.C. 2003).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT, on this 28th day of September, 2007, a copy of the

foregoing Reply Memorandum of Law in Support of Motion to Dismiss was served

electronically and by first-class mail, postage pre-paid, upon:

Mr. Gregory Charles Royal
American Youth Symphony
262 16th Street, SE, Suite 3
Washington, D.C.  20003

Constance M. Pendleton /s/
Constance M. Pendleton